[Civ. No. 23594. Second Dist., Div. Two. Aug. 26, 1959.]

JEANETTE J. BENOM, Appellant, v. HAROLD ISRAEL
BENOM, Respondent.

Morris Lavine for Appellant.

Arthur V. Kaufman for Respondent.

HERNDON, J.—Jeanette J. Benom was awarded an interlocutory judgment of divorce from Harold Israel Benom on the ground of extreme cruelty on October 9, 1957. She has appealed from those portions of the judgment relating to attorney's fees, alimony and the disposition of the property of the spouses.

Viewing the evidence according to the familiar rule, the record discloses the following: Jeanette and Harold Benom

were married on June 10, 1928, in Los Angeles, California. At the time of their marriage, Harold had between $2,000 and $3,000 on deposit in the Riverside Security Bank. Jeanette had approximately $1,300 in liquid assets and a half interest in certain realty worth about $1,500 at the time. Upon the marriage, Harold turned over to Jeanette the sum which he had on deposit and throughout most of their married life Jeanette handled the money and generally managed the family finances.

Jeanette was highly successful in her management of the family finances, and during the years they were married the parties acquired property worth more than $200,000. She attended university summer sessions during 1930 and 1931, and took a special real estate course. She also took a course entitled "Law for the Layman" and was licensed as a real estate broker in 1949 after successfully completing the required examination. Although Jeanette was evidently the dominant figure in the investment decisions, Harold testified that he participated in a number of the escrow transactions and that he joined with his wife in making the investment decisions. Throughout most of their married life Harold worked during the day as a schoolteacher and held another position at night. He turned his salary checks over to his wife who deposited them in their bank account.

In 1933 Jeanette and Harold purchased a parcel of real property, known as the Stearns Drive property, for $4,000. Title was taken in the names of both parties, as joint tenants. The $1,500 down payment came from the combined earnings and joint holdings of the parties and the balance of the purchase price was secured by a trust deed on the property. The rentals which were derived from the Stearns Drive property were deposited in a joint bank account. In 1935 Jeanette and Harold secured a loan of $3,750 on the property, and in February, 1937, they secured another loan on the property in the amount of $4,750. With the proceeds of the refinancing of the Stearns Drive property the parties purchased two lots on Reservoir Street, the title to which was taken in their names as joint tenants. In June, 1937, they sold the Stearns Drive property and the proceeds were deposited in a joint bank account. With these funds the parties purchased a parcel on Heliotrope Drive, again taking title as joint tenants.

The parties continued to buy and sell additional properties. The transcript of the proceedings in the lower court runs to almost 2,000 pages, dealing principally with subsequent trans-

actions by which the funds realized from sales of properties were successfully reinvested. The income from the properties and the proceeds of the sales were deposited in numerous joint bank accounts, and all of the deeds to the properties which were purchased were taken in the names of Jeanette and Harold as joint tenants. The instruments by which loans were obtained on the security of the properties were signed by both of them. Suffice it to say that the record reveals a continuous course of conduct by the parties by which they placed all their holdings in a joint tenancy and dealt with such holdings as joint tenants until 1953.

In 1953 certain difficulties arose between the parties and they consulted an attorney respecting the question of making separate wills. Jeanette indicated that she wanted to make out a will by which she would leave her property to their three children. At the attorney's request Jeanette took the joint tenancy deeds to the properties which they owned to the attorney's office where he examined them. He thereafter prepared three deeds which were later executed by Jeanette and Harold, as joint tenants, conveying certain properties to themselves as husband and wife. (See Civ. Code, § 164.) Thereafter, the parties acquired other properties as joint tenants, including the parcel known as the San Jose property, on April 22, 1954, and the Fallbrook property on April 19, 1955.

In October, 1955, the parties organized a corporation known as Belnoma Enterprises with a capital stock of 1,000 shares. The directors of the corporation were Jeanette, Harold, and plaintiff's sister, Isabel J. Sanford. In January, 1956, they applied to the Commissioner of Corporations for permission to issue 499 shares to Jeannette, 499 shares to Harold and two shares to Jeanette's sister, Isabel. The consideration for the issuance of these shares was the sum of approximately $765.76 in cash and the parcels of real estate known as the Hamilton, the Angelus, and the Fallbrook properties, properties theretofore jointly owned by Jeanette and Harold.

Until December, 1955, all of the assets of the parties were held in both their names. That month the parties received a check for $30,000 in payment of a note and trust deed on the San Jose property. The check was made payable to both Jeanette and Harold, and it was deposited in the Bank of America in both names. Two days later, however, Jeanette withdrew $18,000 from this account and deposited it in the Great Western Savings and Loan Association. Of this $18,000

she deposited $8,000 in the names of her children and herself and the balance of $10,000 she deposited in her name alone. She later withdrew the $10,000 and deposited it with the Gibralter Savings and Loan Association under her maiden name, Jeanette Jacobson.

. Thereafter, on February 21, 1956, Jeanette filed suit for divorce. In her first amended complaint, Jeanette alleged that: ''There is community property belonging to the parties hereto, as follows: (1) Household furniture; (2) 1951 De Soto automobile; (3) 1948 Chevrolet automobile. That the record title to the property hereinafter mentioned stands in the name of plaintiff and defendant as husband and wife; that in truth and in fact said property is the separate property of the plaintiff in that the moneys used for the purchase of said property were originally derived from moneys had by the plaintiff prior to the date of her marriage with the defendant.''

Then followed a list of property itemized (a) through (h), including several parcels of real property, a secured note, and cash on deposit. Following allegations of cruelty on the part of the defendant, Harold, there was a prayer ''For the community property of the parties''; and ''For such other and further relief as [to] the court must [sic] seem just and equitable in the premises.''

Harold filed an answer on April 16, 1956, in which he denied the allegations of cruelty, and in which he alleged that the property described as separate property in subparagraphs (a) through (h) of Jeanette's complaint was the community property of the parties. The same day Harold filed a cross-complaint for divorce on the ground of extreme cruelty and which alleged ''That there is community property of the parties . . . all as set forth in the Answer [to Jeanette's complaint].'' Harold filed an amended cross-complaint for divorce on May 7, 1956, specifying Jeanette's acts of cruelty and repeating the allegations that the property of the parties was community.

On January 18, 1957, Harold filed a notice of motion to amend his pleadings. The affidavit of Robert L. Ordin, Harold's attorney, was filed in support of said motion. From the affidavit it appears that Mr. Ordin and Benjamin Wolfe were partners in the practice of law and that their firm, Wolfe and Ordin, represented Harold in the divorce action; that one partner, Benjamin Wolfe, had handled the Benom matter, and that Wolfe died suddenly and unexpectedly on June 12, 1956.

Mr. Ordin averred that on the death of Wolfe, he, Ordin, for the first time, took over the files in the case of *Benom* v. *Benom*, and commenced preparation of the case. As part of his preparation Mr. Ordin obtained title reports from the Title Insurance and Trust Company with respect to the real property. On October 17 and October 24 the depositions of Jeanette and Harold were taken. In these investigations and proceedings he first discovered that the allegations of his client's pleadings then on file were not in accord with the facts with respect to the status of the properties presently at issue. Mr. Ordin averred that the allegations in Harold's answer and first amended cross-complaint that there was a community interest in the described property was "in error [because] the testimony of the plaintiff and defendant Harold Benom, at their depositions reflect that neither of said parties claims a community interest in any of the assets owned by them, and further that the deeds and records reflecting the transactions in real property of both parties since 1930 indicate that no real property was taken by said parties as community property." Leave was requested to file an amended answer and cross-complaint.

The motion to amend the pleadings was vigorously opposed; however, the motion was granted, and on January 23, 1957, Harold filed a second amended cross-complaint for divorce in which he alleged "[t]hat there is community property of the parties consisting of household furniture and automobiles; that all other property, real and personal, of the parties is owned in equal shares by the parties hereto, which shares are the respective separate property of the parties hereto."

Over three weeks later, on Friday, February 15, 1957, the case proceeded to trial. At that time Jeanette's counsel indicated that on the following Monday he would ask leave to file an amended complaint relating to the issue of community property. On Monday, February 18, 1957, counsel moved to file a second amended complaint in count I of which plaintiff reiterated her prior allegations that the property, the record title to which was in the names of both parties, was her separate property. By a second count plaintiff sought a declaration under the provisions of Code of Civil Procedure, section 1060, as to whether the property in question was separate or community. The court granted plaintiff leave to file her second amended complaint but without the second count for declaratory relief.

Thereafter, on April 26, 1957, Jeanette filed her second amended and supplemental complaint in which she dealt with the property of the parties as follows: She alleged that the household furniture, two automobiles, an insurance policy, and retirement funds in excess of $10,000 were community property, but that all the other real and personal property in question, standing in the names of Jeanette and Harold as husband and wife, was her separate property.

On October 9, 1957, after an extended trial, an interlocutory judgment of divorce was rendered in favor of Jeanette on her amended complaint and against Harold on his amended cross-complaint. Jeanette was awarded custody of the two minor children and sums for their support; she was also awarded alimony of $200 per month, for a period not to exceed five years from May 1, 1957. Defendant was ordered to pay Jeanette's attorney the sum of $500 as fees. The community property was divided between the parties in a ratio of approximately 60-40 in Jeanette's favor. Jeanette was awarded the household furniture and furnishings, a 1948 automobile, and 60 per cent of the total teacher retirement funds in the name of Harold, amounting to $10,395.28. Harold was awarded a life insurance policy having a cash surrender value of $312.50, a 1951 automobile, and the remaining 40 per cent of the retirement fund. Finally, the judgment decreed that Jeanette and Harold were the owners of an undivided half interest in the remainder of the property described in the pleadings, and that such one-half interest was the separate property of each party.

On this appeal from the judgment Jeanette contends:

(1) That the trial court erred to her prejudice: (a) in permitting Harold to amend his pleading to allege that a substantial portion of the subject property was the separate property of the parties and not community property as he first alleged; and (b) in refusing Jeanette permission during the trial, to add a second count seeking a determination whether the subject property was separate or community under the statute authorizing declaratory relief.

(2) That the judgment is unsupported by the evidence to the extent that it declares Harold to be the owner of one-half of certain assets as his separate property.

(3) That the trial court abused its discretion (a) in the division of the community property (b) in refusing to award more than $500 for plaintiff's attorney's fees, and (c) in limiting the plaintiff's alimony to a period of five years.

We have concluded that appellant's contentions are without merit; we shall deal with them in the order above stated.

It is familiar law that the granting or refusal of leave to amend a pleading is so largely within the discretion of the trial court that its ruling will be disturbed on appeal only when there has been a clear abuse of discretion. (See 39 Cal.Jur.2d 344, § 236.) Here, as we have noted, the court allowed defendant to amend his pleadings to allege that, except for certain household furniture and automobiles, all the property of the parties was owned by them in equal shares as their separate property. Plaintiff was certainly aware of the status of the record title of the subject properties. The motion to amend the pleadings was made over a month before the date set for trial of the action. The facts recited in the attorney's affidavit sufficiently explained and justified what otherwise might have been considered a tardy motion. The amendment was allowed more than three weeks before the trial. The amendment did not change Harold's basic cause of action, which was for divorce and for division of community property. The amendment alleged no new facts which could have operated to unfairly surprise the plaintiff. We hold that the ruling did not constitute an abuse of the trial court's discretion. (See *Mills* v. *Jackson,* 19 Cal.App. 695 [127 P. 655] ; *Ford* v. *Ford,* 44 Cal.App. 415 [186 P. 164].)

During the course of the trial plaintiff moved to file a second amended complaint in which, by count I, she reiterated her allegations to the effect that notwithstanding record title, all of the property described in the pleading was her separate property. The tendered pleading also contained a second count in which she sought a declaratory judgment as to the status of the properties in dispute. The text of this proposed second count is not in the record before us.

At the time plaintiff tendered her amended pleading neither party contended that the disputed property was community. Plaintiff alleged that all of it was her separate property. Defendant alleged that each party owned one-half as separate property. Hence, the essence of the dispute between them was whether Harold had any interest in the property. Since declaratory relief pursuant to Code of Civil Procedure, sections 1060 et seq., was not necessary to afford complete relief to the parties, plaintiff has failed to indicate in what manner she was prejudiced by the ruling complained of. Neither has she shown that it constituted an abuse of discretion. (*Sunset Scavenger Corp.* v. *Oddou,* 11 Cal.App.2d 92, 95-96 [53 P.2d

188]; see *Fritz* v. *Superior Court,* 18 Cal.App.2d 232, 235 [63 P.2d 872].)

If it was plaintiff's intention to file a pleading in which she alleged that all of the property acquired by the parties was community property notwithstanding the record title (see *LaMar* v. *LaMar,* 30 Cal.2d 898 [186 P.2d 678]; *Huber* v. *Huber,* 27 Cal.2d 784 [167 P.2d 708]) she has not presented a record by which the asserted error of the trial court has been preserved. We cannot here determine whether plaintiff's proposed second count was effective to raise the issue which she now advances. ■ As stated in 3 California Jurisprudence 2d 797, section 266, ". . . where leave to file an amended pleading during the progress of the trial of a case is refused, but the record on appeal does not contain a copy of the proposed amended pleading, the appellate court has no means of knowing its nature, and hence cannot determine whether the trial court should in any event have permitted it to be filed, or whether its refusal to do so was error." (See *Rogers Brothers Co.* v. *Beck,* 43 Cal.App. 110, 112 [184 P. 515].) ■ In the absence of the amended pleading, we must presume the refusal to allow the amendment of the complaint by adding the second count was correct. (*Cf. Meyer* v. *Selggio,* 80 Cal.App.2d 161, 165-166 [181 P.2d 690]; see 4 Cal.Jur.2d 435, § 565.)

■ It is appellant's theory that "with her separate money, [she] bought a parcel of property which at her husband's instance she had transferred to herself and her husband as joint tenants with no intention on her part of entering into a joint tenancy . . ." Jeanette's testimony would support such a theory. She testified in substance that the Stearns Drive property was purchased with her own funds; that there was an express oral agreement with Harold that the property was to be her separate property; that she had Harold's name placed on the deed because of his insistence that California law required the name of a husband on a deed; that the term "joint tenants" had no significance to her at the time, and that Harold did not contribute any money in the form of premarital savings or postmarital earnings to the purchase of the Stearns Drive property. But the trial court was not obliged to accept Jeanette's version of events which transpired over 20 years before. (*Bazaure* v. *Richman,* 169 Cal.App.2d 218, 221 [336 P.2d 1014]; *Rolinson* v. *Rolinson,* 132 Cal. App.2d 387, 390 [282 P.2d 98].) Her version was contradicted both by Harold's testimony and by other evidence. The evi-

dence above recited is more than adequate to sustain the finding that Harold was the owner of a one-half interest in the specified assets as his separate property.

The parties had raised the issue as to the status of the disputed properties by their pleadings so that the court unquestionably had jurisdiction to determine the ownership of such properties and to quiet title in the owners. (*Huber* v. *Huber, supra,* 27 Cal.2d 784, 793; *Citizens Nat. T. & S. Bank* v. *Hawkins,* 87 Cal.App.2d 535, 541 [197 P.2d 385].) On the merits of the issue as to the ownership of the property "... 'it is well settled in this state that the form of the instrument under which a husband and wife hold title is not conclusive as to the status of the property and that property acquired under a joint tenancy deed may be shown to be actually community property or the separate property of one spouse according to the intention, understanding or agreement of the parties.' (*Socol* v. *King,* 36 Cal.2d 342, 345 [223 P.2d 627].) 'Whether the evidence against the presumption is sufficient to overthrow it, is a question of fact.' (*DeBoer* v. *DeBoer,* 111 Cal.App.2d 500, 504 [244 P.2d 953].) However, the presumption arising from the form of the deed may not be rebutted solely by evidence as to the source of the funds used to purchase the property. (*Siberell* v. *Siberell,* 214 Cal. 767, 773 [7 P.2d 1003]; *In re Rauer's Collection Co.,* 87 Cal.App.2d 248, 257 [196 P.2d 803]; and see *Cash* v. *Cash,* 100 Cal.App.2d 534, 538 [243 P.2d 115].) Nor can the presumption be overcome by testimony of a hidden intention not disclosed to the other grantee at the time of the execution of the conveyance. (*Socol* v. *King, supra,* 36 Cal.2d 342, 346; *Watson* v. *Peyton,* 10 Cal.2d 156, 158 [73 P.2d 906]; *Shaver* v. *Canfield,* 21 Cal.App.2d 734, 741 [70 P.2d 507].)'' (*Gudelj* v. *Gudelj,* 41 Cal.2d 202, 212 [259 P.2d 656].)

 In *Siberell* v. *Siberell,* 214 Cal. 767, 773 [7 P.2d 1003], the court states: "... from the very nature of the estate, as between husband and wife, a community estate and a joint tenancy cannot exist at the same time in the same property. The use of community funds to purchase the property and the taking of title thereto in the name of the spouses as joint tenants is tantamount to a binding agreement between them that the same shall not thereafter be held as community property but instead as a joint tenancy with all the characteristics of such an estate. ... [O]n its face section 164 has no application to a case where 'a different intention is expressed

in the instrument' and it seems to us to be clear, as already pointed out above, that a joint tenancy, the evidence of which the law requires to be on the face of the conveyance creating it, is of necessity an expression of the intention to hold the property otherwise than as community property and that the equal interest of the spouses must therefore be classed as their separate but joint estate in the property.''

As stated in *Socol* v. *King,* 36 Cal.2d 342, 345, 346 [223 P.2d 627] : ''. . . it is well settled in this state that the form of the instrument under which a husband and wife hold title is not conclusive as to the status of the property and that property acquired under a joint tenancy deed may be shown to be actually community property or the separate property of one spouse according to the intention, understanding or agreement of the parties. [Citations.] . . . ▆ When there is an oral or written agreement as to the ownership of the property [citations], or where such an understanding may be inferred from the conduct and declarations of the spouses [citations], it is true that the terms of the deed are not controlling. But where such circumstances do not exist, a true joint tenancy is created by a conveyance to husband and wife in that form, although the property is purchased with community funds [citations] or with the separate funds of the husband [citations]. ▆ When property is purchased with community funds and title is taken in joint tenancy at the request of the wife, the secret intention of the wife that the property shall remain a part of the community is not effective. 'She cannot defeat her act by testimony of a hidden intention not disclosed to the other party at the time of the execution of the document.' [Citation.] The same rule should be applied where joint funds are used to buy the property.''

▆ Civil Code, section 164, provides that : ''. . . when any . . . property is acquired by husband and wife by an instrument in which they are described as husband and wife, unless a different intention is expressed in the instrument, the presumption is that such property is the *community property* of said husband and wife.'' (Emphasis added.) This provision of Civil Code, section 164, would clearly be applicable to the three parcels of property which the parties in 1953 conveyed to themselves as husband and wife, and in the absence of evidence to the contrary the statutory presumption would apply to require a finding that these parcels were community property. (*Cf. Dunn* v. *Mullan,* 211 Cal. 583, 588

[296 P. 604, 77 A.L.R. 1015]; *Estate of Jolly,* 196 Cal. 547, 553 [238 P. 353].) But that presumption is of course rebuttable and the evidence of the course of conduct of the parties above recited is more than adequate to sustain a finding that the presumption was rebutted, and the parties held undivided half interests in such property as separate property. (*Thomasset* v. *Thomasset,* 122 Cal.App.2d 116, 123 [264 P.2d 626]; see 10 Cal.Jur.2d 718-719, § 45.)

Appellant's other assignments of error are equally unavailing. The division of community property favored Mrs. Benom. Section 146 of the Civil Code provides that in the case of a dissolution of marriage on the ground of extreme cruelty, the community property shall be assigned to the respective parties in such proportions as the court, from all of the facts in the case, may deem just. A wide latitude is necessarily vouchsafed to the trial judge for the exercise of his judgment and discretion in the division of community property (*cf. Thomasset* v. *Thomasset, supra,* 122 Cal.App.2d 116, 131; *LeFiell* v. *LeFiell,* 108 Cal.App.2d 321, 324 [239 P.2d 61].) In the case at bar no abuse of discretion in the division of the community property has been shown.

Appellant complains that the court abused its discretion in refusing to award her more than $500 for attorneys' fees.

However, the record discloses that her attorneys previously had received $1,000 on account of their fees under a pendente lite award. The amount of counsel fees to be awarded in a divorce action is addressed to the sound discretion of the trial court, and in the absence of a *clear* showing of abuse, the determination of the trial court will not be disturbed on appeal. (See 16 Cal.Jur.2d 488, § 196.) In the case at bar, the court was aware that Jeanette was worth a sum in excess of $100,000, and that most of the trial time was devoted to a dispute as to the title and ownership of the various properties. (See *Solomon* v. *Solomon,* 118 Cal.App.2d 149, 156-157 [257 P.2d 760].) In these circumstances the additional award of $500 did not constitute an abuse of discretion.

Finally, the trial court did not abuse its discretion in limiting the alimony award to five years. (See 16 Cal.Jur. 2d 499, § 207.) The statute (Civ. Code, § 139) expressly provides that an award of support to the injured party may be for "... her life, or for such shorter period as the court may deem just, having regard for the circumstances of the

respective parties . . ." Moreover, the order is subject to modification, and on a showing of changed circumstances the court may order a continuation of alimony beyond the five-year period. (*Schraier* v. *Schraier*, 163 Cal.App.2d 587, 589 [329 P.2d 554]; *Simpson* v. *Simpson*, 134 Cal.App.2d 219, 221-222 [285 P.2d 313].)

Affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied September 24, 1959, and appellant's petition for a hearing by the Supreme Court was denied October 20, 1959.