[Civ. No. 32721.   Second Dist., Div. Five.   Apr. 21, 1969.]

JANET MARKOVITZ, Plaintiff and Appellant, v. EDWARD MARKOVITZ, Defendant and Respondent.

Axelrad, Sevilla & Ross and Robert Dale Heron for Plaintiff and Appellant.

Robert J. Grossman for Defendant and Respondent.

STEPHENS, J.—This is an appeal from an interlocutory decree of divorce granted for extreme cruelty. Plaintiff herein contends that the apportionment of community property made by the trial court is contrary to law and unjust, and asks this court to modify the judgment in that respect, and to instruct the trial court to enter judgment as so modified.

There can be no doubt that this court, as a reviewing court, is by statute given the power of changing the trial court's disposition of community property if from a review of the record this court finds that the apportionment made is unjust. (Civ. Code, § 148; *Hill* v. *Hill,* 150 Cal.App.2d 34, 35 [309 P.2d 44].)

Plaintiff's claim in the present case is that since she obtained the divorce on the ground of extreme cruelty, she was entitled to be awarded more than one-half of the community property and that this was not done. More specifically, she contends that in disposing of the principal community asset, a convalescent hospital, to the parties as tenants in common, the trial court erred in awarding defendant husband two-thirds of the "net proceeds" which are earned from the operation of the hospital. Our task, however, is not confined to reviewing the disposition of each separate asset in isolation from the disposition of the whole of the community, but rather it embraces a determination of whether the award of community property to each party, viewing the judgment in its entirety, is in accord with justice in the light of the

facts of this particular case and the condition or circumstances of the parties. (*Hill* v. *Hill, supra,* 150 Cal.App.2d 34, 36.) We know of no principle of law or practice which requires that each asset or fund must be divided equally or in a manner favorable to the innocent party. (See *Green* v. *Green,* 27 Cal.App.2d 99, 101 [80 P.2d 513]; *Thomsen* v. *Thomsen,* 31 Cal.App. 185, 189 [159 P. 1054].)

In the present case, under the terms of the interlocutory decree, plaintiff is to receive the following assets: (1) real property valued at $3,950; (2) furniture valued at $600; (3) an automobile valued at $750; (4) insurance policies valued at $88.52. Defendant husband is to receive the following assets: (1) a coin collection valued at $1,200; (2) an automobile valued at $1,500; (3) insurance policies valued at $1,545.54.[1] Each party was awarded an undivided one-half interest in certain savings bonds and in a convalescent hospital. As previously noted, defendant husband was awarded two-thirds of the net proceeds to be realized from the continued operation of this asset, plaintiff wife to receive the remaining one-third. Defendant was given the power to manage and operate this hospital as if he were the general partner in a limited partnership, free from interference by plaintiff, the limited partner. As a correlative obligation, defendant was ordered to hold plaintiff harmless and indemnified from any debt or liability incurred in the operation of the hospital. Defendant was authorized to allocate to himself a salary of $2,200 per month, plus the costs and expenses of one ''first-class automobile'' if used for business purposes. Plaintiff was awarded $600 per month for her support, and was given a lien on defendant's one-half interest in the hospital to insure defendant's continued payment of this obligation. Each party was given custody of one child; custody of a third child was awarded jointly. Defendant was ordered to pay $100 a month child support for the minor in plaintiff's custody, and directed to pay the medical bills of all three children during their minority.

While it is true that the trial court was under an obligation to award the innocent party more than one-half of the community property, it is within the sound discretion of the trial court to determine how much more than half it will award. (*Irish* v. *Irish,* 246 Cal.App.2d 705 [55 Cal.Rptr. 55];

---

[1] The minor children of the parties were evidently the beneficiaries of some of these policies since the decree directs the defendant to maintain in effect all policies in which the children have a beneficial interest.

*Harding* v. *Harding,* 223 Cal.App.2d 709 [36 Cal.Rptr. 184].) However, the inquiry does not end there. Both the trial court and appellate court must consider all circumstances in the case. (*Stevenson* v. *Superior Court,* 62 Cal.2d 150 [41 Cal. Rptr. 466, 396 P.2d 922].) ▇ As stated in *Hill* v. *Hill, supra,* 150 Cal.App.2d 34, 37-38: "Apparently the decisions have embraced the concept that it is proper in such cases to visit punishment upon the erring spouse in the apportionment of community property. Nevertheless, divorce having been granted and the time having arrived for apportioning the community property, the amount thereof, the age of the parties, their physical and mental condition, their ability to support themselves, and the needs of minors, if such there be, are all matters ranking higher in the scale of importance than the infliction of punishment for wrongdoing."

▇ Placing a value on a business as a going concern is often problematical. (See *Thompson* v. *Thompson,* 136 Cal. App.2d 539 [288 P.2d 932].) The problem is compounded where, as in the present case, the continued success of such business is largely dependent on the personal efforts and skills of one of the spouses. The trial judge, in a memorandum opinion filed prior to the rendition of the interlocutory decree, demonstrated an acute awareness of the difficulties inherent in dealing with this asset: "A superficially easy solution to the problem of the disposition of the hospital would have been simply to order the business sold to the highest bidder and the proceeds divided between the parties, who are bitterly antagonistic to each other, and cannot agree upon any mutually acceptable solution of their problem. However, I [am] convinced . . . that both the parties and their children would suffer an irreparable loss if this property . . . were to be sold at a forced sale. . . . Mr. Markovitz has demonstrated his ability to operate this business at a profit, if he chooses to continue to work as hard toward that end as he has in the past. I have no doubt that he can continue to do so. . . . The success of the hospital is apparently due, in a large degree, to the industry and business ability of Mr. Markovitz and his assistant. . . . , their willingness to work long hours, and to perform many duties which many other management teams might hire others to perform. I see no alternative but to continue the hospital management and control in Mr. Markovitz, recognizing the equity of Mrs. Markovitz in the property and business, and endeavoring to secure for her her proper share of the returns. . . . Yet, in acceding to the defendant's

request that he be given the management and control of this asset, I have much concern that the defendant will continue to resort to every device which offers any likelihood of success, in an effort to minimize [footnote omitted] or eliminate entirely any share of the net proceeds of the business that might be distributable to Mrs. Markovitz. For this reason, I believe it to be absolutely necessary that Mrs. Markovitz be awarded a flat monthly sum in the nature of unconditional support money, the obligation to pay which must be imposed upon the defendant regardless of what may appear to be, or what may actually be, the future financial condition of the hospital. . . . On the other hand, if Mr. Markovitz is to have any motivation to continue to operate the hospital at a profit, . . . . I realize that he must be permitted to retain the larger share of the operating proceeds of the hospital.''

It is evident that the trial judge went to considerable lengths to fashion an equitable decree which would preserve intact for the parties' mutual benefit the only income-producing asset of the community, and which would, moreover, insure plaintiff against suffering future economic loss irrespective of the fortunes of such enterprise. To accomplish this result, the trial court saddled defendant with all the obligations of a general partner in a limited partnership. A minute examination of the record before us ''fails to yield a lodestar which directly and unequivocally charts a path through the facts of this case to a haven for either party.'' (*Hansen* v. *Hansen,* 233 Cal.App.2d 575, 591 [43 Cal.Rptr. 729]). As stated in *Stromberg* v. *Stromberg,* 220 Cal.App.2d 307, 310 [33 Cal.Rptr. 825]: '' [I]t would be difficult to say, as a matter of law, that defendant wife did not receive more than one-half of the value of the community property. Here, plaintiff husband was under an obligation to operate and run the business to make it of any value to either party. His obligation to pay his wife the amount of the award in alimony, child support and maintenance of the business as a going concern was important not only to him but to the wife as well. The court, in the interest of justice, endeavored to work out a program for their mutual benefit. It is quite apparent that the trial judge had in mind the old adage that one should not kill the goose that lays the golden egg.''

We conclude that under the facts presented, the trial court's allocation of the community property was manifestly equitable and should not be interfered with by this court. (See *Benom* v. *Benom,* 173 Cal.App.2d 286 [343 P.2d 632];

*Henie* v. *Henie,* 171 Cal.App.2d 572 [340 P.2d 1024].)
The judgment is affirmed.

Kaus, P. J., and Aiso, J., concurred.