34 Cal.App.3d 345 (1973)
109 Cal. Rptr. 862
In re the Marriage of PAUL A. and JANET E. CARY.
PAUL A. CARY, Appellant,
v.
JANET E. CARY, Respondent.
Docket No. 31311.
Court of Appeals of California, First District, Division One.
September 26, 1973.
*347 COUNSEL
Truce, Veal & Jackson and Walter Truce for Appellant.
Campbell, Drollman & Canaday and Gerald Canaday for Respondent.
OPINION
ELKINGTON, J.
The principal issue presented by this appeal concerns California's Family Law Act (Civ. Code, §§ 4000-5138, inclusive, sometimes hereafter the "Act"), effective January 1, 1970, which provides among other things that the concept of individual "fault," or "guilt," or "punishment" for such human error, shall not be considered in determining family property rights.
*348 Paul Cary and Janet Forbes, never married to each other, lived together for more than eight years. During that time they held themselves out to their friends and parents, and to the world generally, as a married couple; she always used the name of Cary. They purchased a home and other property, borrowed money, obtained credit, filed joint income tax returns and otherwise conducted all business as husband and wife. Both knew that they were not married; they had talked several times about a wedding ceremony, but somehow they never got around to it. Four children were born to Paul and Janet; they were supported by Paul who always acknowledged them as his own. Their birth certificates and school registration recorded the parents as Paul and Janet Cary. While Paul worked Janet generally stayed at home taking care of the children and the house.
The relationship between Paul, Janet, and their children must reasonably be deemed that of a family, coming within the broad purview of the Family Law Act. Paul makes no contention to the contrary.
While living together the parties accumulated some real and personal property through the earnings of Paul. Had they been married it would have been community property, a fact conceded by the parties.
(1a) In 1971 Paul petitioned the superior court for "Nullity of the marriage pursuant to Civil Code section 4001." A principal trial issue was the question of Janet's rights in the property acquired with Paul's earnings. The trial court's determination that this property should be equally divided resulted in the instant appeal by Paul.
An early day, but nevertheless still valid, rationale of California's community property law is found in Meyer v. Kinzer (1859) 12 Cal. 247, 251-252, where the state's Supreme Court said: "The [community property law] proceeds upon the theory that the marriage, in respect to property acquired during its existence, is a community of which each spouse is a member, equally contributing by his or her industry to its prosperity, and possessing an equal right to succeed to the property after dissolution, in case of surviving the other. To the community all acquisitions by either, whether made jointly or separately, belong.... All property is common property, except that owned previous to marriage or subsequently acquired in a particular way...."
This principle is given present day expression by Civil Code section 687 which, with exceptions here inapplicable, provides: "Community property is property acquired by husband and wife, or either, during marriage, ..." (Italics added.)
While ordinarily applying only to those legally wed, the community *349 property principle has frequently been applied where one or both of the parties mistakenly, but in good faith, believed themselves married. (See Vallera v. Vallera (1943) 21 Cal.2d 681, 683-685 [134 P.2d 761]; Feig v. Bank of America etc. Assn. (1936) 5 Cal.2d 266, 272-274 [54 P.2d 3]; Flanagan v. Capital Nat. Bank (1931) 213 Cal. 664, 667 [3 P.2d 307]; Schneider v. Schneider (1920) 183 Cal. 335, 341 [191 P. 533, 11 A.L.R. 1386]; Sousa v. Freitas (1970) 10 Cal. App.3d 660, 665 [89 Cal. Rptr. 485].)
In such situations the property has been treated in substantially the same manner as if the parties had been validly married. No inquiry into the respective property "contributions" was permitted. Speaking of the claim of one who in good faith, but mistakenly, believed her marriage valid, the court in Coats v. Coats (1911) 160 Cal. 671, 678-679 [118 P. 441], stated:
"[I]t is entirely immaterial that the bulk of the property was acquired between the years 1900 and 1906, and that the plaintiff's services in its accumulation were `of no monetary value.' She is not suing to recover for services rendered under a contract for labor, nor to establish the value of her interest in a business partnership. What she did, she did as a wife, and her share of the joint accumulations must be measured by what a wife would receive out of community property on the termination of the marriage. `The law will not inquire ... whether the acquisition was by the joint efforts of the husband and wife, or attempt to adjust their respective rights in proportion to the amount each contributed thereto. The law will not concern itself with such an inquiry, but will leave the parties to share in the property in the same proportion as though the marriage contract was what the wife had every reason to believe it to be, i.e., a valid marriage.'" (See also Vallera v. Vallera, supra, 21 Cal.2d 681, 683; Sanguinetti v. Sanguinetti (1937) 9 Cal.2d 95, 99 [69 P.2d 845, 111 A.L.R. 342]; Pack v. Vartanian (1965) 232 Cal. App.2d 466, 475-476 [42 Cal. Rptr. 729]; Caldwell v. Odisio (1956) 142 Cal. App.2d 732, 736 [299 P.2d 14]; Estate of Krone (1948) 83 Cal. App.2d 766, 769 [189 P.2d 741]; Santos v. Santos (1939) 32 Cal. App.2d 62, 65-66 [89 P.2d 164].)
But where unmarried persons knowingly lived together in a "meretricious" or "sinful" relationship the law of California had consistently shown no concern for vindication of property rights, which under a valid marriage would have been legally established. (See Keene v. Keene (1962) 57 Cal.2d 657, 662-665 [21 Cal. Rptr. 593, 371 P.2d 329]; Vallera v. Vallera, supra, 21 Cal.2d 681; Flanagan v. Capital Nat. Bank, supra, 213 Cal. 664; Lazzarevich v. Lazzarevich (1948) 88 Cal. App.2d 708, 718-719 [200 P.2d *350 49]; Baskett v. Crook (1948) 86 Cal. App.2d 355, 359-362 [195 P.2d 39]; Oakley v. Oakley (1947) 82 Cal. App.2d 188, 190-192 [185 P.2d 848]; 4 Witkin, Summary of Cal. Law (7th ed.) pp. 2715-2716.) "Equitable considerations" were not present, the courts held, because of the "guilt" of both of the parties. (Keene v. Keene, supra, 57 Cal.2d at p. 662; Vallera v. Vallera, supra, 21 Cal.2d at p. 685; Lazzarevich v. Lazzarevich, supra, 88 Cal. App.2d at p. 719.) The parties were denied any relief and "`the law would leave them in the position in which they placed themselves.'" (Cline v. Festersen (1954) 128 Cal. App.2d 380, 384 [275 P.2d 149]; Garcia v. Venegas (1951) 106 Cal. App.2d 364, 369 [235 P.2d 89]; Baskett v. Crook, supra, 86 Cal. App.2d at p. 362; Oakley v. Oakley, supra, 82 Cal. App.2d at p. 192), often to the profit of one (usually the man) and to the prejudice of the other (see Keene v. Keene, supra, 57 Cal.2d at p. 662, fn. 2, and authority there cited).
Even where a marriage had been solemnized, upon its dissolution and where some moral disparity between the parties was found to exist, it was the judicial practice "`to visit punishment upon the erring spouse in the apportionment of the community property....'" (Markovitz v. Markovitz (1969) 272 Cal. App.2d 150, 153 [77 Cal. Rptr. 96]; Hill v. Hill (1957) 150 Cal. App.2d 34, 37 [309 P.2d 44].) This punishment might even result in the award of all of the community property to the "innocent" marital partner. (Barham v. Barham (1949) 33 Cal.2d 416, 431 [202 P.2d 289]; Irish v. Irish (1966) 246 Cal. App.2d 705, 708 [55 Cal. Rptr. 55].) In such cases a trial court's failure to punish the errant spouse was an abuse of discretion, requiring reversal of the judgment. (Rocha v. Rocha (1954) 123 Cal. App.2d 28, 29 [266 P.2d 130]; Gaeta v. Gaeta (1951) 102 Cal. App.2d 87, 88 [226 P.2d 619].)
Recognizing the harshness of the rule of punishment for spousal "guilt" some courts announced that, although it continued as law, it ranked lower than many other considerations "in the scale of importance" as a determinant for division of community property. (See Markovitz v. Markovitz, supra, 272 Cal. App.2d 150, 153; Hill v. Hill, supra, 150 Cal. App.2d 34, 37-38.) The "punishment and reward" concept of California's family law was widely criticized. Many believe that it was "tacit recognition of the developing public opinion that resulted in enactment of the new law [the Family Law Act]." (See Attorney's Guide to Family Law Practice (Cont. Ed.Bar 2d ed. 1972) p. 251.)
"The basic substantive change in the law [brought about by the Family Law Act] is the elimination of fault or guilt as grounds for granting or denying divorce and for refusing alimony and making unequal division of *351 community property. ..." (Italics added; In re Marriage of McKim (1972) 6 Cal.3d 673, 678 [100 Cal. Rptr. 140, 493 P.2d 868]; and see Civ. Code, § 4800.) It is said that "by far the most significant provision ... is the mandatory requirement of an equal division of community property...." (Grant (1971-1972) 23 Hastings L.J., p. 249.) The equal division of community property was one of the ways "of advancing [the Act's] primary no-fault philosophy." (In re Marriage of Juick (1971) 21 Cal. App.3d 421, 427 [98 Cal. Rptr. 324].) So strong is the policy behind the Act that in family law proceedings relating to property rights, any pleading or proof relating to misconduct, or "guilt," or "innocence" of a party "shall be improper and inadmissible, ..." (Italics added; see Civ. Code, § 4509.)
In a summary of the Act, and particularly its section 4800 calling for equal property division, respected writers have said:
"The basic theory of the new law is that, in disposing of the property, a dissolution of marriage should be treated much like the dissolution of a business partnership. Regardless of the economic circumstances of business partners or of their moral conduct during the existence of the partnership, on dissolution the partners receive a portion of the assets commensurate with their respective partnership interests." (Attorney's Guide to Family Law Act Practice (Cont.Ed.Bar 2d ed. 1972) p. 250.)
The Family Law Act applies not only to valid marriages. It expressly covers a family relationship based on a void or voidable marriage where "either party or both parties believed in good faith that the marriage was valid, ..." (See Civ. Code, § 4452.)[1]
An analysis of section 4452 discloses that where one party to a non-marital family relationship in bad faith knew of the marriage's infirmity or nonexistence, and the other did not, the Act neither penalizes nor rewards the respective parties upon a judicial division of their accumulated property. The party who in bad faith brought about the pseudomarriage is not for that reason left where found by the court. Nor may any "guilt" or "innocence" of the parties in their relationship after entering the illegitimate union be considered by the court. Sections 4452, 4509 and 4800 assure *352 that the parties, without "punishment" or "reward" to either, shall receive an equal division of that which would have been community property had they been validly married.
But in the case before us both parties appear "guilty"; each was aware of the lack of a marital ceremony. Paul urges that since the Act does not expressly cover such a situation, the pre-1970 notion that the law must leave the parties where it finds them is the applicable rule.
We disagree.
Giving effect to such an argument would lead to an unreasonable result and frustrate the obvious objective of the Act. We should be obliged to presume a legislative intent that a person, who by deceit leads another to believe a valid marriage exists between them, shall be legally guaranteed half of the property they acquire even though most, or all, may have resulted from the earnings of the blameless partner. At the same time we must infer an inconsistent legislative intent that two persons who, candidly with each other, enter upon an unmarried family relationship, shall be denied any judicial aid whatever in the assertion of otherwise valid property rights.
(2) Statutes must be given a reasonable interpretation (City of Santa Clara v. Von Raesfeld (1970) 3 Cal.3d 239, 248 [90 Cal. Rptr. 8, 474 P.2d 976]; Brown v. Huntington Beach etc. Sch. Dist. (1971) 15 Cal. App.3d 640, 646 [93 Cal. Rptr. 417]); absurd results are to be avoided if possible (In re Cregler (1961) 56 Cal.2d 308, 312 [14 Cal. Rptr. 289, 363 P.2d 305]; Morris v. Oney (1963) 217 Cal. App.2d 864, 870 [32 Cal. Rptr. 88]); and it must be presumed that the Legislature did not use "inconsistent provisions on the same subject" (Moore v. City Council (1966) 244 Cal. App.2d 892, 902 [53 Cal. Rptr. 603]; and see In re Haines (1925) 195 Cal. 605, 613 [234 P. 883]). (3) Above all, the intention of the Legislature must be ascertained (People v. Superior Court (1969) 70 Cal.2d 123, 132 [74 Cal. Rptr. 294, 449 P.2d 230]), and "regard is to be had not so much to the exact phraseology in which the intent has been expressed as to the general tenor and scope of the entire scheme embodied in the enactments. ..." (Italics added; County of Los Angeles v. Frisbie (1942) 19 Cal.2d 634, 639 [122 P.2d 526]; Richie v. Tate Motors, Inc. (1971) 22 Cal. App.3d 238, 243 [99 Cal. Rptr. 223].)
(4) By the Family Law Act the Legislature has announced it to be the public policy of this state that concepts of "guilt" (and punishment therefor) and "innocence" (and reward therefor) are no longer relevant in the determination of family property rights, whether there be a legal marriage or *353 not, and if not, regardless of whether the deficiency is known to one, or both, or neither of the parties.
(5) "It is for the Legislature ... to choose between conflicting policies, ..." (Werner v. Southern Cal. etc. Newspapers (1950) 35 Cal.2d 121, 129 [216 P.2d 825].) "The declaration of public policy is essentially a legislative function and although the courts occasionally invade that field, a declaration by the Legislature is paramount. ..." (Italics added; Wilson v. Walters (1941) 19 Cal.2d 111, 115 [119 P.2d 340].)
(1b) It therefore becomes our duty to give expression to the public policy expressed by the Family Law Act. We hold, as to the issue before us, that the Act supersedes contrary pre-1970 judicial authority.
It follows that the trial court properly disregarded evidence of the "guilt" of the parties to the instant action. Having done so, it was obliged to divide their property evenly, according to the dictate of Civil Code section 4800.
It is argued that our holding would tend to discourage the unemployed family partner from entering into a marital union, since that party without marriage would nevertheless have the marriage's property benefits. But with equal or greater force the point might be made that the pre-1970 rule was calculated to cause the income-producing partner to avoid marriage and thus retain the benefit of all of his or her accumulated earnings.
As we have pointed out, under application of equitable principles a result contrary to our holding was consistently reached prior to the Family Law Act. But our holding in no way conflicts with those high principles. (6) "`The jurisdiction of courts of equity is not ... diminished when by statutory changes some rights cease to exist and certain cases which courts of equity once entertained can no longer arise. [The equity power of courts] was not intended as a limitation upon the power to legislate upon the rights of persons.'" (Modern Barber Col. v. Cal. Emp. Stab. Com. (1948) 31 Cal.2d 720, 728 [192 P.2d 916]; Spreckels v. Hawaiian Com. etc. Co. (1897) 117 Cal. 377, 381 [49 P. 353]; Estate of Barnett (1929) 97 Cal. App. 138, 141 [275 P. 453].)
(1c) It should be pointed out that the criteria for application of the rule we apply to the case before us is much more than that of an unmarried living arrangement between a man and woman. The Family Law Act obviously requires that there be established not only an ostensible marital relationship but also an actual family relationship, with cohabitation and mutual recognition and assumption of the usual rights, duties, and obligations attending marriage.
*354 (7) Paul's remaining contention is that the trial court abused its discretion in awarding custody of the two younger children to Janet. We observe no such abuse of discretion, or error. There was substantial evidence that Janet was a fit person for such custody, and that the best interests of the younger children called for such custody. Civil Code section 4600, subdivision (a), as in effect at the time of the trial and judgment, provided that such custody should be awarded "To either parent according to the best interests of the child, but, other things being equal, custody should be given to the mother if the child is of tender years...." (8) The fact that it was Janet's intention to live in her home country, Canada, with the two children did not render the trial court's custody provision an abuse of discretion. (See Gantner v. Gantner (1952) 39 Cal.2d 272, 282 [246 P.2d 923]; Donnally v. Blankenstein (1959) 167 Cal. App.2d 282, 287 [334 P.2d 260].)
We observe that the trial court's judgment, intending to divide the parties' property evenly, inadvertently ordered Paul to deliver to Janet his promissory note or cash in the amount of $3,000 instead of $1,500. This error is conceded by the parties and must be corrected.
The superior court will modify the judgment by providing that the cash or promissory note to be delivered by petitioner to respondent shall be in the amount of $1,500 instead of $3,000 as now provided; as so modified the judgment is affirmed. The parties will bear their respective costs.
Molinari, P.J., and Sims, J., concurred.
NOTES
[1] Civil Code section 4452: "Whenever a determination is made that a marriage is void or voidable and the court finds that either party or both parties believed in good faith that the marriage was valid, the court shall declare such party or parties to have the status of a putative spouse, and, if the division of property is in issue, shall divide, in accordance with Section 4800, that property acquired during the union which would have been community property or quasi-community property if the union had not been void or voidable. Such property shall be termed `quasi-marital property.' If the court expressly reserves jurisdiction, it may make the property division at a time subsequent to the judgment."