Kathy A. CHAMBERS,
Plaintiff-Appellant,

v.

Patricia HARRIS, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 80–2107.

United States Court of Appeals, Tenth Circuit.

Aug. 30, 1982.

Timothy Meehan, Taos, N. M. (Sue B. McDowell, Taos, N. M., with him on the brief), Northern New Mexico Legal Services, Inc., Taos, N. M., for plaintiff-appellant.

Natalie R. Dethloff, Atty., Dept. of Health and Human Services, Baltimore, Md. (Alice Daniel, Asst. Atty. Gen., Washington, D. C., R. E. Thompson, U. S. Atty., and Ronald F. Ross, Asst. U. S. Atty., Albuquerque, N. M., with her on the brief), for defendant-appellee.

Before SETH, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Kathy A. Chambers appeals from the district court's order affirming the final decision of the Secretary of Health and Human Services denying Chambers' application for mother's insurance benefits under 42 U.S.C.A. § 402(g)(1) (Section 202(g)(1) of the Social Security Act).

Chambers and decedent Paul D. Wilson lived together in California, without the benefit of a marriage certificate, from January 1970 to May 1977. They generally held themselves out to the public as husband and wife. In June 1975, Chambers became pregnant by Wilson. When the baby was born in March 1976, Wilson was not named on the birth certificate as the father. Wilson and Chambers continued to live together after the baby was born, however, and Wilson supported them financially until his death in June 1977.

Chambers applied to the Social Security Administration (SSA) for mother's insurance benefits under 42 U.S.C.A. § 402(g)(1) on August 30, 1977. Under that statute the widow of an insured is entitled to receive mother's insurance benefits. As Chambers was never formally married to Wilson, and therefore was not his widow under the definition delineated in 42 U.S.C.A. § 416(h)(1)(A), the SSA denied Chambers' application. Chambers' application was reconsidered by the SSA at her request, and was again denied.

In May 1978 Chambers requested a hearing before an administrative law judge (ALJ). The ALJ considered the case *de novo* and concluded that Chambers did not meet the requirements of § 402(g)(1) and thus was not eligible to receive mother's benefits. The ALJ's decision was affirmed by the Appeals Council and thereby became the final decision of the Secretary of Health and Human Services.

Chambers then filed suit in the District Court for the District of New Mexico pursuant to 42 U.S.C.A. § 405(g), seeking review of the Secretary's determination. The district court affirmed the Secretary's ruling.

On appeal, Chambers contends that: (1) there is insufficient evidence to support the Secretary's finding that Chambers did not satisfy the requirements of 42 U.S.C.A. § 416(h)(1)(A), and (2) 42 U.S.C.A. § 402(g)(1) violates the equal protection component of the due process clause of the Fifth Amendment to the United States Constitution.

I.

Chambers argues that, although she was not legally married to Wilson, under

**334**

California law[1] she would qualify as his widow and thus be eligible to receive mother's benefits. A woman is considered to be the widow of an insured under 42 U.S.C.A. § 416(h)(1)(A) if:

> ... the courts of the State in which such insured individual ... was domiciled at the time of death ... would find that such applicant and such insured individual were validly married ... at the time he died. If such courts would not find that such applicant and such insured individual were validly married at such time, such applicant shall, nevertheless be deemed to be the ... widow ... if such applicant would, under the laws applied by such courts in determining the devolution of intestate personal property, have the same status with respect to the taking of such property as a ... widow ... of such insured individual.

Although Chambers concedes that the California courts have not definitively ruled whether a meretricious spouse[2] is considered an heir under the laws of intestate succession, she contends that the trend of the law indicates that the California courts would conclude that Chambers was Wilson's widow. In support of this contention, Chambers cites three cases: *In re Marriage of Cary*, 34 Cal.App.3d 345, 109 Cal.Rptr. 862 (1973), *In re Estate of Atherley*, 44 Cal.App.3d 758, 119 Cal.Rptr. 41 (1975), and *Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal. Rptr. 815, 557 P.2d 106 (1976). None of these cases is dispositive. Each case involved the question of the rights of a meretricious spouse to participate in the distribution of property acquired during the meretricious relationship; whether a meretricious spouse is considered an intestate heir was not at issue.

Chambers argues that, even though the cited cases are not directly on point, they are indicative of a trend in the California law toward recognizing the rights of a mer-

etricious spouse, and that this court should find that the California courts would rule that a meretricious spouse is an heir under its laws of intestate succession. This argument is not defensible. The cases cited by Chambers go no further than to hold that a meretricious spouse may be entitled to participate in a distribution of property acquired during the meretricious relationship. In reaching this conclusion, the court in *Cary* and *Atherley* applied the Family Law Act (California Civil Code §§ 4000 *et seq.*). Later, in *Marvin*, the California Supreme Court rejected the Family Law Act as the basis for recovery but held that recovery may be based on the dictates of contract or trust law, or on the equitable theory of *quantum meruit.*

The requirements of 42 U.S.C.A. § 402(g)(1) are clear. Chambers must demonstrate that she was either the legal widow of Wilson, which she admittedly cannot do, or would be considered Wilson's widow under the California laws of intestate succession. The California courts have never ruled that a meretricious spouse may be considered an intestate heir. In fact, the trend of the law is to the contrary. Under California Code of Civil Procedure § 377(a), California's wrongful death statute, a wrongful death action may be maintained, in an individual capacity, only by the decedent's heirs. "Heirs" is defined in § 377(b) to include those who would be entitled to succeed to the property of the decedent under California's rules of intestate succession. In *Vogel v. Pan American World Airways, Inc.*, 450 F.Supp. 224 (S.D.N.Y. 1978), the court, applying California law, ruled that Rachel H. Vogel, who had been divorced from LeRoy William Vogel on October 12, 1976, was not Vogel's heir under the California law of intestate succession and thus could not bring a wrongful death action upon Vogel's death in March 1977. Mrs. Vogel contended that she should be

---

1. Inasmuch as Wilson was domiciled in California at the time of his death, under 42 U.S.C.A. § 416(h)(1)(A) California law applies to determine whether Chambers may be considered Wilson's widow.

2. A meretricious spouse is a person living with another of the opposite sex in a family relationship, under pretense of a marriage relationship but with knowledge that there is no valid marriage as a matter of law.

allowed to maintain the action because, as a meretricious spouse, she would be entitled to succeed to Vogel's property under California law. In rejecting this contention, the court stated: "The plain fact is that 'meretricious spouses' are not included in the statutory definition of 'heirs' ".

Similarly, the California Court of Appeals recently ruled in *Harrod v. Pacific Southwest Airlines, Inc.*, 118 Cal.App.3d 155, 173 Cal.Rptr. 68 (1981) that Garry S. Harrod, who had been living with Paula A. Blake since February 1977, did not qualify as an heir under § 377(b) and thus could not bring a wrongful death action upon her death in September 1978. That court also found that a meretricious spouse is not an "heir" under California law.

While the present case is not based upon a wrongful death action, the California wrongful death statute requires a finding, for purposes of standing, that the plaintiff is the decedent's heir. Inasmuch as a claimant under § 402(g)(1) also must demonstrate that she is the heir of an insured, that aspect of the discussed cases is authoritative. Chambers was never married to Wilson and thus, as a meretricious spouse, cannot be considered his widow under the California laws of intestate succession. Consequently, Chambers was not entitled to receive mother's insurance benefits.

## II.

Chambers argues, first, that 42 U.S. C.A. § 416(h)(1)(A) denies her the equal protection of the law because the statute, which ostensibly was intended to ease the economic dislocation that occurs when a wage earner dies, does not give her the opportunity to demonstrate that she was dependent upon the wage earner. Instead, the statute arbitrarily denies her mother's insurance benefits because she was never married to the insured. Secondly, Chambers argues that 42 U.S.C.A. § 402(g)(1) creates an arbitrary classification, based on marital status, which is not rationally related to a legitimate governmental interest, and, as such, the statute denies her the equal protection of the law.

Similar arguments were considered and rejected in *Califano v. Boles*, 443 U.S. 282, 99 S.Ct. 2767, 61 L.Ed.2d 541 (1979), a case which specifically addressed the constitutionality of the mother's insurance benefits program. In *Boles*, the Court, recognizing the inequities which inevitably result from congressional attempts to categorize generally social security beneficiaries, nevertheless held that restricting the payment of mother's insurance benefits to widows and surviving divorced mothers exclusively did not create an arbitrary classification. In reaching its determination the Court reiterated its oft-quoted maxim that "there is no constitutional requirement that 'a statutory provision ... filter out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute.' "

The Court further held that restricting the class of beneficiaries to widows and surviving divorced mothers was rationally related to the government's legitimate interest of easing the economic privation which results from a wage earner's death, and thereby was not unconstitutional. The Court found that Congress could reasonably conclude, in seeking to limit the category of beneficiaries to those who actually suffer economic dislocation upon the death of a wage earner, that a woman who was never married to the wage earner was less likely to be financially dependent upon him at the time of his death. The interests of eliminating administrative costs necessary to the conduct of individual investigations into the dependency of each claimant and preventing reduced benefits which would result if the class were to be expanded, justified the perhaps underinclusive class even when some financially dependent unmarried mothers were summarily excluded from receiving benefits.

Chambers argues that *Boles* is not controlling because the factual situation which gave rise to the Court's observation that benefits to individual claimants might be reduced if the recipient class were expanded, is not present in this case. In *Boles* the deceased wage earner was survived not

only by a widow and two children but also by a son who was the product of a living arrangement with the claimant, Nancy Boles. In this case, on the other hand, Chambers is the only individual claiming benefits as a dependent of Wilson. Moreover, she argues that she was primarily dependent upon Wilson and not secondarily dependent as were the claimants in *Boles*.

Chambers' attempt to distinguish *Boles* is without merit. The claimants in *Boles* were the named representatives of a nation-wide class which included all illegitimate children and their mothers who were ineligible for mother's insurance benefits because the mother was never married to the wage earner who fathered her child. Chambers clearly comes within the class specified in *Boles* and, consequently, is bound by that decision.

WE AFFIRM.