[Civ. No. 7494. Third Dist. June 22, 1948.]

CHARLES BASKETT, Appellant, v. PEARL CROOK, Respondent.

Charles H. Baldwin and Norman A. Gregg for Appellant.

Henry S. Lyon for Respondent.

THOMPSON, J.—The complaint alleges that plaintiff and defendant, while living together as husband and wife, acquired, by their joint efforts, specified real and personal properties which they own as tenants in common, and which are in the possession of the defendant; that she thereafter married another man and, upon demand, refuses to convey or deliver any of said property to plaintiff. The plaintiff prays for a decree determining his interest in the property, and for partition and sale of the real property and conveyance to him of his share thereof.

The evidence shows that plaintiff and defendant first met at a dance in Oakland in 1939. He was then a married man who was separated from his wife. He was not then employed. Mrs. De Mers was a widow. She owned and operated a small grocery store in Oakland. There were living rooms in the store building. She also owned household goods, a Ford automobile, a small sum of money she had inherited from her husband's estate, and two Prudential Life insurance policies which she afterwards cashed for the aggregate sum of $1,050. The plaintiff had no money or property. By common consent the plaintiff occupied a room in the store building and helped the defendant in household duties and in waiting on customers. There was no agreement of the parties to marry and no agreement with respect to property rights. The plaintiff testified that they lived together as husband and wife without any pretense of marriage. The defendant testified that they did not live together as husband and wife, but lived in separate rooms, and that she never agreed that plaintiff should have any portion of the real or personal property or of the proceeds of the business. The defendant kept her own bank account, conducted her own business, personally negotiated her own sales and purchases of properties and paid the bills. The real property, store business and automobiles were held in her own name. After about one year the defendant sold her store for $600 and purchased another small store in her own name. The parties occupied rooms in that store building under circumstances similar to those previously existing. After about two years the plaintiff secured employment with Western Dye Company at $35 per week. Later he was employed by Dobeckmun & Company, in Berkeley, at $240 per month. He turned over his pay checks, or a part of them, to the defendant, who paid expenses with some and may have deposited a portion thereof

in her bank account. The last-mentioned store business was also sold by the defendant for about $600.

The defendant bought a cottage in Richmond in 1943 for $750. She negotiated the purchase and paid for it with her own funds. Some of the cash received from her life insurance policies went into the purchase and improvements of that property. The plaintiff performed services in remodeling that house. They lived in that home for some time as they had previously lived. The mother of the defendant also lived there with them. The defendant bought a new Ford sedan automobile for $1,100, applying her old machine upon the purchase price at a valuation of $275. It was bought and licensed in her name. In 1945, the defendant sold the Richmond home for $3,100 cash. With a part of that money she purchased United States War bonds in the amount of $1,200, which bonds she placed in the joint names of both of them. The balance of that money was placed in her own bank account. Until the commencement of this suit the plaintiff never claimed any interest in any of said properties, nor interfered in any manner with defendant's business transactions. In 1945, after the plaintiff was employed, he remained away from Richmond, except that he said he returned for the weekends. Without consulting the plaintiff or informing him of her intentions, the defendant married Mr. Crook. The plaintiff thereafter wrote her two letters, in neither of which he claimed any interest in the properties. This suit was commenced in June, 1946.

The court found that plaintiff and defendant did not live together as husband and wife, or hold themselves out as such; that they were not engaged in any joint business enterprise or copartnership; that there was no agreement between them with respect to the ownership of any of the real or personal properties involved in the action, except that the United States War bonds in the sum of $1,200 were placed in their joint names; that plaintiff had no right, title or interest in any other real or personal property, including the grocery businesses and the Richmond real property, except one-half interest in said bonds, and that the defendant is the sole owner and entitled to possession of all other properties of every character and nature. Judgment was accordingly rendered, awarding plaintiff one-half of said bonds, and determining that the defendant is the owner and entitled to all other properties and the proceeds thereof. From that judgment the plaintiff has appealed.

The appellant asserts that the findings and judgment are not supported by the evidence, and that the real and personal properties were acquired by the joint efforts and contributions of funds of both parties while they lived together and held themselves out as husband and wife. For the first time, on appeal, the plaintiff claims that a resulting trust was created in his favor in one-half of all real and personal properties.

We are of the opinion the findings and judgment are adequately supported by the evidence. The grocery businesses, the automobiles and the real property involved in this action belonged to the defendant. They were purchased by her and were held in her name. She maintained her bank account in her own name. She individually negotiated all purchases of real and personal properties, and conducted the businesses. There is no evidence defendant ever agreed to give or convey any of said property to plaintiff on account of his contributions, services, relationship, or otherwise. In the absence of evidence to the contrary, we must assume his labor and contributions from his pay checks were intended as payments for his share of the living expenses or as gifts. ■ The money paid to defendant and expended by her or deposited in her bank account, over which she had exclusive control, must be presumed to belong to her. (*De Hart* v. *Allen*, 43 Cal.App.2d 479 [111 P.2d 342].) The war bonds, which were purchased by the defendant in the joint names of both parties, were divided equally between them.

■ There is no evidence of a putative or common-law marriage in this case, or that the parties in good faith believed themselves to be married or held themselves out to the public as husband and wife. Nor is there evidence that they ever intended to become married. The defendant testified that they did not hold themselves out as husband and wife, and that they did not live together as such. According to plaintiff's testimony, their relationship was knowingly illicit, without any agreement with respect to property rights. Equity affords no remedy for a meretricious joint adventure under such circumstances. There were no community interests acquired in the property. Community interests in property may not be acquired under sections 164 or 687 of the Civil Code, by a man and woman who knowingly live together without marriage, under a void marriage or in meretricious relationship. In the absence of a valid, subsisting marriage, community interests in property cannot be acquired.

(*Feig* v. *Bank of Italy*, 218 Cal. 54, 56 [21 P.2d 421];
*Schneider* v. *Schneider*, 183 Cal. 335 [191 P. 533, 11 A.L.R.
1386]; *Santos* v. *Santos*, 32 Cal.App.2d 62 [89 P.2d 164];
*Macchi* v. *La Rocca*, 54 Cal.App. 98 [201 P. 143].) ▮ It is
true that, in the absence of a definite agreement, when a
man and woman live together as husband and wife, believing
in good faith that they are married, the property which they
acquire by their joint efforts may be equitably distributed
between them as cotenants. (*Vallera* v. *Vallera*, 21 Cal.2d
681, 684 [134 P.2d 761]; *Santos* v. *Santos, supra; Macchi* v. *La
Rocca, supra.*) When there is no genuine belief of either party
that they are married and living together as husband and
wife, in the absence of an agreement or other evidence of
ownership, they may not be deemed to be joint tenants or
cotenants in the property acquired by either of them during
that relationship. (*Oakley* v. *Oakley*, 82 Cal.App.2d 188, 192
[185 P.2d 848]; *Vallera* v. *Vallera, supra.*) In the Vallera
case, last cited, the plaintiff brought suit for separate main-
tenance and for a division of community property. She
had lived and cohabited with the defendant for three years
without marriage and without any agreement with respect
to property acquired by them. She knew that he was then
married to another woman. Marian Vallera relied on her
evidence of a ''common law marriage.'' The trial court found
that they were not married, that their relationship was mere-
tricious, that there was no community property involved, but
determined that they were tenants in common in the prop-
erty which they acquired during that period, and distributed
one-half interest therein to each of them. On appeal the
Supreme Court reversed that judgment. The court said:

''. . . The controversy is thus reduced to the question
whether a woman living with a man as his wife but with
no genuine belief that she is legally married to him acquires
by reason of cohabitation alone the rights of a co-tenant in
his earnings and accumulations during the period of their
relationship. It has already been answered in the negative.
(*Flanagan* v. *Capital Nat. Bank*, 213 Cal. 664 [3 P.2d 307].)
Equitable considerations arising from the reasonable expec-
tation. of the continuation of benefits attending the status
of marriage entered into in good faith are not present
in such a case.

''Plaintiff's lack of good faith in alleging the belief that
she had entered into a valid marriage would. not, however,

preclude her from recovering property *to which she would otherwise be entitled.* If a man and a woman live together as husband and wife *under an agreement to pool their earnings and share equally in their joint accumulations, equity will protect the interests of each in such property.* [Citing authorities.] . . . *There is no evidence that the parties in the present case made any agreement concerning their property or property rights."* (Italics added.)

In this case the evidence affirmatively shows that no agreement was ever made between the parties with respect to their earnings or to the property acquired, except that the United States War bonds in the sum of $1,200 were purchased in their joint names. But one-half of those bonds was awarded to the plaintiff, of which award the defendant does not complain. There is no evidence in this case that any of plaintiff's pay checks or earnings were invested in the properties in question. It does appear that an unspecified amount of his wages for a short period was turned over to the defendant, a part of which she says she may have deposited in her bank account. But from that account she drew checks and paid bills for their maintenance and other expenses. Not a dollar of plaintiff's wages was traced to any property which was purchased by the defendant. There is no evidence upon which an equitable distribution of any sum of money or property could be made to the plaintiff.

In the Oakley case, *supra,* a marriage ceremony was performed between the parties in Mexico. They returned to California where they lived together as husband and wife for nearly five years. That purported marriage was void. The plaintiff brought suit for divorce and for $5,000 as the reasonable value of her services while she lived with the defendant. He filed an answer and cross-complaint asking for a divorce. The evidence was conflicting. The trial court denied her application for divorce and refused to grant her a judgment for her services. The court found that she "has performed no services for defendant while believing she was his legitimate wife." Judgment rescinding the purported marriage was granted the defendant on his cross-complaint. From that judgment the defendant appealed, contending that she was entitled to compensation for her services. On appeal the judgment was affirmed. The court said:

"In the absence of an agreement between plaintiff and defendant for the division of his earnings or for the pay-

ment by him to her of a stated sum or for the reasonable value of her services to him over and above the value of the support and maintenance which he furnished her, she is not entitled to a judgment therefor. There is no evidence of any such agreement between them. Where, as here, both parties knowingly participated in the fraudulent marriage the trial court properly rendered judgment annulling the marriage but otherwise, as a court of equity, refused further relief, leaving them in the position in which they had placed themselves.''

The principle determined in the Oakley case is directly applicable to the circumstances of this case. (See 35 Am. Jur. § 55, p. 219.)

Finally the appellant contends, for the first time on appeal, that a resulting trust was created in the property in his favor. But there is a total absence of evidence to support that contention. Clear and conclusive evidence is required to establish a resulting trust in either real or personal property. (*Stromerson* v. *Averill,* 22 Cal.2d 808, 815 [141 P.2d 732]; *Rench* v. *McMullen,* 82 Cal.App.2d 872 [187 P.2d 111]; note, 23 A.L.R. 1500.) It is necessary to show that it was the *intention* of the parties to create the trust. The presumption is indulged that the holder of the title to property is the owner thereof. (*Woodside* v. *Hewel,* 109 Cal. 481 [42 P. 152]; 25 Cal.Jur. § 114, p. 247.) The amount of money contributed to particular property by the claimant must definitely appear to enforce a resulting trust in his favor. (25 Cal.Jur. § 57, p. 190.) In *Bertelsen* v. *Bertelsen,* 7 Cal.App. 258 [94 P. 80], upon facts similar to those of the present case, the parties lived ''as husband and wife,'' in illicit relations, without marriage, for a period of three years. He gave her $700 with which to buy a rooming house to which she took title. She exchanged that property for Los Angeles real property which was also conveyed to her. He subsequently gave her $860 with which she bought another rooming house in her own name. He had knowledge of those transactions, and failed to complain of her taking title in her name until after their separation. He then brought suit to establish a resulting trust in the properties. The trial court denied the relief sought. Plaintiff appealed. The judgment was affirmed. The Supreme Court said:

''We think the court properly refused the relief. We would not be inclined, even if the findings that the sums of

money paid defendant were in the nature of a gift were not entirely supported by the evidence, to disturb the judgment. The whole transaction seems to have for its basis payments in consideration of a continued course of prostitution. But, aside from this, there is ample evidence to support the finding that the sums paid defendant by plaintiff were in the nature of a gift, from which it follows that the proceeds of such money became the defendant's property.''

Moreover, it is too late to inject into this case a new theory of the creation of an asserted resulting trust for the first time on appeal. A resulting trust was not pleaded, nor does the evidence or findings support that theory. The record of the trial discloses no reference to the subject of resulting trusts That theory was not called to the attention of the trial court. This case was tried on the theory that plaintiff and defendant acquired the property in question by their joint earnings and contributions while they were living together as husband and wife. No agreement with respect to the property or a division thereof was alleged or proved. No specific amount of plaintiff's money was alleged or proved to have been contributed toward the purchase of any specified property. None of the money from his pay checks was traced to any of the properties in question. A resulting trust was not involved in this trial. A reviewing court should adhere to the theory upon which a cause is tried and determined by the trial court. A litigant may not change his position and adopt a different theory of action for the first time on appeal. (*Munfrey* v. *Cleary,* 75 Cal.App.2d 779, 785 [171 P.2d 750]; *Martin* v. *Diaz,* 124 Cal.App. 200, 205 [12 P.2d 57]; 2 Cal.Jur. § 68, p. 237.)

In the Munfrey case, *supra,* this court said in that respect:

''Also as a general rule where a case has been tried upon one theory that theory must be adhered to on appeal, and a party who has tried his case wholly or in part on a certain theory, which theory was acted upon by the trial court, cannot, on appeal, change his position and adopt a different theory, since to do so would be unfair to the trial court and to opposing counsel. [Citing authorities.]''

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.