[No. B045920. Second Dist., Div. Three. Oct. 3, 1990.]

In re the Marriage of GLADYS I. and JAMES T. WEAVER.
GLADYS I. WEAVER, Appellant, v.
JAMES T. WEAVER, Respondent.

**COUNSEL**

Dolores J. Ramaker for Appellant.

Kenneth R. Petrello for Respondent.

OPINION

**CROSKEY, J.**—Gladys I. Weaver (Gladys) appeals from that portion of a judgment of dissolution of marriage which awarded to her former husband, James T. Weaver (James), a community property interest in the home in which the parties had resided during their marriage. The award was based upon a finding by the trial court that Gladys had orally transmuted the home into community property,[1] the home having originally been her separate property. As we conclude that the court applied the wrong standard of proof, we reverse the judgment and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

Gladys and James married in March 1949. They had been married 39 years when they separated in May 1988. During their years of marriage, they lived in a home on Victoria Avenue in the City of Los Angeles, which they initially shared with Gladys's parents.

The property had been acquired by Gladys and her parents as joint tenants in 1944, before Gladys and James married. It was a new home at that time. James, who contributed no part of the purchase price, moved into the home shortly after he and Gladys married. Gladys's mother died in 1957 and her father died in February 1960. As the surviving joint tenant Gladys became the sole legal and record owner of the property.

Gladys and James continued to reside in the home throughout their 39-year marriage. Until July 1960, the only encumbrance on the property was a trust deed securing the repayment of a $6,740 (noninterest bearing) loan from Gladys's brother. These funds had been borrowed by Gladys and her parents shortly after the house was purchased, and the loan was evidenced by a demand note on which no payments of principal or interest were ever made prior to July 1960.

About five months after Gladys's father died, she and James borrowed $12,000, the repayment of which was secured by a new trust deed on the house. They both signed the note and the trust deed.[2] These funds were used to pay off the existing encumbrance to Gladys's brother and to purchase

---

[1] Since January 1, 1985, all such transmutations must be "made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (Civ. Code, § 5110.730, subd. (a).) However, this legislative change has no application to this case as the claimed transmutation before us was made, if at all, prior to January 1, 1985. (Civ. Code, § 5110.730, subd. (e)).

[2] The trust deed recited that the trustors were "Gladys I. Weaver, a married woman and James T. Weaver, her husband[,] Gladys I. Weaver, having acquired title as Gladys I. Gatlin, a widow."

new cars for both Gladys and James. Although no rent had ever been paid to Gladys's parents, community funds had been used to pay property taxes, utilities, insurance, general living expenses and some maintenance expenses while her parents were alive. Similarly, the $12,000 loan was ultimately paid off from community earnings, and the parties used community funds to pay their living expenses after Gladys's parents passed away. Record title to the house at all times remained solely in Gladys's name. However, James claims in this litigation that Gladys orally transmuted her admittedly separate property interest in the house to community property.

Prior to May of 1988, Gladys and James began experiencing marital discord. When James raised the issue of a division of what he claimed was the community ownership of the house, Gladys took the position that he had no interest and that the house was entirely her separate property.

James's response was to file a declaratory relief and quiet title action in March 1988, naming Gladys as the defendant. Two months later, Gladys filed a petition for dissolution of their marriage. These two cases were later consolidated with the family law matter becoming the controlling case and the initial pleading in each case being deemed the response/answer to the other action. In her petition for dissolution, Gladys listed the Victoria Avenue property as her separate property and sought confirmation of it as such.

The case proceeded to trial under Code of Civil Procedure section 36, as the parties were both over 70 years of age. Trial was had on January 5, 1989. Several issues, including the question of the status of the Victoria Avenue property, were taken under submission. The court permitted the parties to file written argument on those issues, which they did. On March 2, 1989, the trial court issued its memorandum of intended decision.

In its written decision, the court expressly stated that the proper standard of proof, and the one which it had applied, was preponderance of the evidence. The court concluded from the evidence that Gladys had made an oral gift to James of an interest in the Victoria Avenue property so that they would share equally Gladys's interest in that property, and thus had transmuted the property from her separate property as a surviving joint tenant into community property. Thereafter, Gladys filed a notice of intention to move for new trial, which motion James opposed.

A hearing on the motion was held on May 10, 1989 and the court issued written findings and orders. The court stated in part: "the court reassessed the evidence presented by review of the reporter's transcript and remains convinced that [James] was reasonable in his interpretation of [Gladys's]

statements over a period of 39 years that she intended to make a gift of one-half of said real property to [James]. Based upon this reasonable interpretation of donative intent, [James] gave up the opportunity to buy a residence as a joint domicile with [Gladys]. Instead for more than 35 years, he contributed his earnings towards repairs, maintenance, [the] pay off of a loan, note payments, tax payments, and other expenses in connection with the house because he reasonably believed that he had an interest in said real property.[3] Therefore, [Gladys's] motion for a new trial as to the disposition of the Victoria Avenue property is denied."

The judgment dissolving the parties' marriage and disposing of their property was entered October 3, 1989. Thereafter, Gladys filed this appeal, contesting only the trial court's disposition of the real property.

## ISSUES PRESENTED

This case presents two principal threshold issues, plus two subordinate questions which, in view of our determination to reverse the judgment, must also be addressed for the guidance of the trial court upon retrial.[4]

1. What is the proper standard of proof where a spouse claims a transmutation of property?

2. If the trial court applied an improper standard, has Gladys acquiesced therein or waived her right to object thereto?

3. Did the trial court properly consider evidence of a proposed testamentary disposition of the property by Gladys as expressed in an unsigned will?

4. What is the probative value of James's "reasonable belief" on the issue of whether a transmutation had been made?

---

[3] However, the court at no time made any findings with respect to the fair rental value of the home or whether the community's contributions to the house, its upkeep or the payoff of the encumbrance equaled or exceeded such value.

[4] One further issue raised by Gladys involved the trial court's refusal to consider a declaration (of one Nadine Gatlin) submitted by Gladys in support of her new trial motion. However, it need not be considered by us. In view of our resolution of this matter and the consequent necessity for a new trial where such evidence can be offered in the form of live testimony, this issue is moot.

DISCUSSION

1. *Evidence Code Section 662 Applies to Claimed Transmutations of Property in Family Law Actions*

Gladys's interest in the house was clearly a separate property interest. "'All property owned by a husband or wife before marriage, and "that acquired afterwards by gift, bequest, devise or descent, with the rents, issues, and profits thereof," is the separate property of the acquiring spouse. (Civ. Code, §§ 5107, 5108; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 610 . . . .) ██ Property purchased with separate property funds is likewise the separate property of the acquiring spouse. [Citation.] Such separate property does not change its character as a result of the marriage or of its mere use in the marital relationship. [Citation.] Nor does separate property lose its character as such merely because of a change in form or identity. [Citations.] [¶] If property is separate at the time of its acquisition, "it remains so with the exception of such increase thereof as may have been due to the contribution of the community by virtue of capital or industry." (*Thomasset* v. *Thomasset, supra*, at p. 123.)'" (*In re Marriage of Stoner* (1983) 147 Cal.App.3d 858, 862-863 [858, 195 Cal.Rptr. 351], quoting from *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 454 [152 Cal.Rptr. 668] which was disapproved on another point in *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285].) The question presented here is whether Gladys effectively transmuted that separate property interest.

Prior to January 1, 1985, there was little in the way of formalities, such as a signed document or recordation, required in order to prove a transmutation of a spouse's separate property to community. (*Woods* v. *Security-First Nat. Bank* (1956) 46 Cal.2d 697, 701 [299 P.2d 657]; *Kennedy* v. *Taylor* (1984) 155 Cal.App.3d 126, 129 [201 Cal.Rptr. 779].) All that was required was substantial credible and relevant evidence (*Beck* v. *Beck* (1966) 242 Cal.App.2d 396, 407 [51 Cal.Rptr. 491]) showing the oral or written "agreement or common understanding between the spouses" (*Estate of Levine* (1981) 125 Cal.App.3d 701, 705 [178 Cal.Rptr. 275]). That agreement could also be inferred from the conduct or declarations of the parties. (*Estate of Blair* (1988) 199 Cal.App.3d 161, 167 [244 Cal.Rptr. 627]; *In re Marriage of Garrity and Bishton* (1986) 181 Cal.App.3d 675, 685 [226 Cal.Rptr. 485]; *Estate of Levine, supra*, at p. 705.)

However, on or after January 1, 1985 such a transmutation could only be proven by an express written declaration "made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (Civ. Code, § 5110.730, subd. (a).) With respect to any transmutation

claimed to have occurred prior to that date, there would be no requirement of such a writing as such a "retroactive application would contravene due process substantially affecting a vested property right. [Citation.]" (*Estate of Blair, supra*, 199 Cal.App.3d at p. 168.) ■ While this statutory change effectively imposed a special statute of frauds requirement on the transmutation of marital property (*Estate of MacDonald* (1990) 51 Cal.3d 262, 268-270 [272 Cal.Rptr. 153, 794 P.2d 911]) it says nothing about the issue of the standard of proof to be applied by the trier of fact.

The principal and dispositive issue before us is whether the trial court was correct in applying the "preponderance of the evidence" standard in making its factual determinations. Gladys contends that Evidence Code section 662 applies and requires a higher standard than the court admittedly used. James, of course, disagrees and argues that Evidence Code section 662 has no application to marital disputes and the standard of proof applied by the court was the correct one and the factual determinations made were supported by substantial evidence. Evidence Code section 662 provides that "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by *clear and convincing proof.*" (Italics added.)

Neither our research nor that of the parties has disclosed any case applying Evidence Code section 662 to family law disputes. However, no decision has been found rejecting such an application. The only analogous cases we have found where the issue has arisen are those involving parties sharing a nonmarital but nonetheless confidential relation.

In *Tannehill* v. *Finch* (1986) 188 Cal.App.3d 224 [232 Cal.Rptr. 749], the court was presented with the claim of a woman who had lived with the defendant for six years during which time he had acquired in his own name title to substantial real and personal property. She asserted an interest in the property and had sued for breach of contract (on the theory announced in *Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106]) when the defendant refused to divide the property with her. At trial, the jury was instructed that plaintiff had the burden of establishing the existence of the alleged contract by a preponderance of the evidence.

The Court of Appeal reversed and held that Evidence Code section 662 applied and required that the jury should have been instructed on the higher standard of clear and convincing proof. The court relied primarily upon the case of *Toney* v. *Nolder* (1985) 173 Cal.App.3d 791 [219 Cal.Rptr. 497], where the court had applied Evidence Code section 662 to an alleged oral partnership agreement for the purchase of certain property. *Toney* held that the fact that the parties shared a confidential relationship created no excep-

tion to the mandatory language of Evidence Code section 662.[5] The court said that, "Once a confidential relationship is shown, however, the plaintiff still has the burden to prove that the 'deed was not what it purported on its face to be' (*Taylor* v. *Bunnell* (1931) 211 Cal. 601, 606 [296 P. 288]), and the standard of proof is that 'the evidence must be clear, satisfactory and convincing' (*ibid.*). [Citation.]" *Toney* v. *Nolder, supra,* 173 Cal.App.3d at p. 795.)

In both *Tannehill* and *Toney,* the plaintiffs sought to establish an oral contractual agreement which, if proven, would rebut the presumption that the defendants, as owners of legal title, were also the full beneficial owners. In both cases, the parties shared a confidential relationship, not unlike that shared by marital partners. (See Civ. Code, § 5103, subd. (b).)[6] However, James argues that Evidence Code section 662 cannot be applied in a marital action. He relies entirely upon *Beck* v. *Beck, supra,* 242 Cal.App.2d 396, to support his position. In *Beck,* the court merely followed the rule that evidence offered to rebut a presumption arising from the form of a deed (by which the marital partners had taken title as joint tenants) " 'may consist of any substantial credible and relevant evidence showing the intention, understanding or agreement of the parties.' " (*Id.* at p. 407, quoting from *Lovetro* v. *Steers* (1965) 234 Cal.App.2d 461, 468 [44 Cal.Rptr. 604].) That recitation says nothing about the question of the standard of proof raised here.

In a case such as this, where one spouse has acquired legal title to a parcel of real property under circumstances which make such acquisition separate property, we see no reason not to apply the higher evidentiary standard set out in Evidence Code section 662.[7] There is nothing in that statutory man-

---

[5] Toney pointed out that the confidential relationship exception was not an exception to the clear and convincing evidence rule, "but to the 'so-called American rule . . . that the repudiation of an oral promise to reconvey does not give rise to a constructive trust.' " (*Toney* v. *Nolder, supra,* 173 Cal.App.3d at p. 795.) That is, where a confidential relationship exists there is an exception to the application of the statute of frauds which would otherwise prohibit an inter vivos transfer upon an oral trust between parties who share such a relationship. However, California does not follow the majority rule on this point, but instead holds that proof of a confidential relationship between the parties is *not* a prerequisite to proof of an equitable interest in the property which is based on an oral trust. "Moreover, irrespective of whether a confidential relationship is shown, to overcome the presumption of title the fact that the property is held in trust must be independently proved by clear and convincing evidence. [Citation.]" (*Id.* at p. 796.)

[6] Civil Code section 5103, subdivision (b), provides in relevant part, that "in transactions between themselves, a husband and wife are subject to the general rules which control the actions of persons occupying confidential relations with each other."

[7] This result is also consistent with the policy behind the enactment of Civil Code section 4800.1. There, the Legislature, in order to provide a uniform and consistent standard of proof for "establishing the character of property acquired by spouses during marriage in joint title form" (Civ. Code, § 4800.1 subd. (a)(1)), provided that such acquisitions would result in a presumption that the property so acquired was community property. "This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶]

date which excludes marital actions from those cases involving a claimed dichotomy between the legal and beneficial interests to property.

James was thus required to prove his claim of an oral transmutation of Gladys's separate property to community by clear and convincing proof. This required an evidentiary showing which would meet a more exacting measure of persuasion than the customary preponderance. The Supreme Court, in a different context, described this standard by saying that " 'Clear and convincing' evidence requires a finding of high probability. This standard is not new. We described such a test, 80 years ago, as requiring that the evidence be ' "so clear as to leave no substantial doubt"; "sufficiently strong to command the unhesitating assent of every reasonable mind." ' (*Sheehan* v. *Sullivan* (1899) 126 Cal. 189, 193 . . . .) It retains validity today. [Citation.]" (*In re Angelia P.* (1981) 28 Cal.3d 908, 919 [171 Cal.Rptr. 637, 623 P.2d 198].) This characterization has been repeated and applied in many cases (*People* v. *Martin* (1970) 2 Cal.3d 822, 833, fn. 14 [87 Cal.Rptr. 709, 471 P.2d 29], disapproved on another point in *People* v. *Chojnacky* (1973) 8 Cal.3d 759, 764 [106 Cal.Rptr. 106, 505 P.2d 530]; *People* v. *Caruso* (1968) 68 Cal.2d 183, 190; *Tannehill* v. *Finch, supra,* 188 Cal.App.3d 224, 228; *Lillian F.* v. *Superior Court* (1984) 160 Cal.App.3d 314, 320 [206 Cal.Rptr. 603]; *United Professional Planning, Inc.* v. *Superior Court* (1970) 9 Cal.App.3d 377, 386 [88 Cal.Rptr. 551]; see also 2 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 1982) § 45.1, p. 1639.)[8]

Each of the parties invites us to examine the evidence presented at trial and to make a determination as to whether the clear and convincing standard was in fact met assuming, arguendo, that it applies. This, we

(1) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (2) Proof that the parties have made a written agreement that the property is separate property." (Civ. Code, § 4800.1, subd. (b); see also, *In re Marriage of Lucas, supra,* 27 Cal.3d 808, 814-815; *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 496-497 [257 Cal.Rptr. 397].)

[8] Although on retrial this matter will again be heard by the court without a jury, we have some concern about the way BAJI No. 2.62 defines "clear and convincing" evidence. While the trial court will not be instructing a jury in this matter, it may well look to the BAJI instruction for guidance.

BAJI No. 2.62, seventh edition 1990 pocket part, provides that "clear and convincing" evidence is "evidence of such convincing force that it demonstrates, in contrast to the opposing evidence, *a high probability* of the truth of the fact(s) for which it is offered as proof." (Italics added.) This appears to be an editing of the accepted full definition of the "clear and convincing" standard and is both misleading and unnecessarily limited. Indeed, it seems to suggest an evidentiary test which is significantly less rigorous than the one which the Supreme Court has repeatedly characterized as requiring evidence which is "clear, explicit, and unequivocal," "so clear as to leave no substantial doubt" and " ' "sufficiently strong to command the unhesitating assent of every reasonable mind." ' " (*In re Angelia P., supra,* 28 Cal.3d at p. 919; *People* v. *Martin, supra,* 2 Cal.3d at p. 833, fn. 14; *People* v. *Caruso, supra,* 68 Cal.2d at p. 190.)

respectfully decline to do. This is an issue which must be resolved by the trial court in the first instance. (*Taylor* v. *Polackwich* (1983) 145 Cal.App.3d 1014, 1022 [194 Cal.Rptr. 8].) We content ourselves with the conclusion, given the evidence presented, that had the trial court applied the correct standard, it is reasonably probable that a result more favorable to Gladys would have been reached. (*Pool* v. *City of Oakland* (1986) 42 Cal.3d 1051, 1069 [232 Cal.Rptr. 528, 728 P.2d 1163]; *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 770 [206 Cal.Rptr. 354, 686 P.2d 1158].) We therefore simply hold that Gladys was entitled to the protection of this higher burden of proof and James was required to establish his claim by clear and convincing evidence.

Thus, unless Gladys has acquiesced in or waived her right to object to the standard applied by the trial court, this case must be returned to the trial court for retrial.

2. *Under the Facts of This Case the Standard of Proof Is an Issue of Law Which May Be Raised for the First Time on Appeal*

▄ The record reflects that there was no discussion during the trial about the proper standard of proof. The parties have conceded at oral argument that it was not an issue to which either gave any consideration. Just what standard the trial court would use did not become apparent until the notice of intended decision was filed. As already noted, the court then made express its application of the preponderance standard.

Thus, neither party raised or argued the application of Evidence Code section 662. Moreover, Gladys did not assert that issue in her new trial motion. She argued merely the sufficiency of the evidence to satisfy the lesser standard of preponderance. On these facts, James contends that Gladys has effectively waived the issue and cannot raise it for the first time on appeal.

"Ordinarily, a party may not change the theory of his case for the first time on appeal. [Citation.]" (*Frink* v. *Prod* (1982) 31 Cal.3d 166, 170 [181 Cal.Rptr. 893, 643 P.2d 476].) However, "consideration of points not raised below . . . may be permitted when important issues of public policy are involved. (*Hale* v. *Morgan* [1978] 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512].)" (*Ibid.*) In our view, this exception to the general principle of appellate review applies here.

The rule we adopt has not previously received appellate attention in family law litigation. It involves an important issue of public policy. How, and under what circumstances, the courts will recognize a transfer of

property interests between marital partners is obviously a matter of significant public concern.[9]

This case presents the issue with respect to the proper standard of proof in a clear and straightforward manner and it is important that we deal directly with it. Because the "important public policy issue" exception applies, we conclude that Gladys has not acquiesced in the court's application of the wrong standard or waived her right to raise an objection thereto on appeal.

### 3. *The Court Improperly Considered Evidence of Gladys's "Testamentary Intent"*

During the trial, Gladys testified concerning certain possible testamentary dispositions which she might make of the property on her death. This testimony centered around certain bequests involving an interest in the property to both James and to her son Robert which were set forth in a will document which had been prepared for her, but not signed.

The trial court, in its decision, specifically referred to such evidence as supportive of its conclusion that Gladys had intended to make a gift of a one-half interest in the property to James. Specifically, the court stated, "This donative intent is further substantiated by [Gladys's] testimony regarding her testamentary intentions for the property, wherein she stated that she intended to *leave* one-half of the property to [James]." (Italics added.)

Gladys argues that such use of her testamentary intent was improper as violative of Civil Code section 5110.740. That section provides, "A statement in a will of the character of property is not admissible as evidence of a transmutation of the property in any proceeding commenced before the death of the person who made the will."[10]

---

[9] While the Legislature has now imposed the requirement that a transmutation of the status of property as between marital partners (on or after Jan. 1, 1985) must be in writing (Civ. Code, § 5110.730, subds. (a) and (e)), that is simply a special application of the statute of frauds to those particular types of transactions. It does not affect our conclusion that proof of the transmutation, whether oral or written, and whenever made, must be "clear and convincing."

[10] While Civil Code section 5110.740 was enacted at the same time as Civil Code section 5110.730 we have no hesitancy in applying it to this case. First, Civil Code section 5110.730 is expressly limited to transmutations occurring on or after January 1, 1985. Secondly, Civil Code section 5110.730 is an application of the statute of frauds which could not be so applied as to defeat a vested property right. (*Estate of Blair, supra,* 199 Cal.App.3d at p. 168.) In contrast, Civil Code section 5110.740 establishes an evidentiary or procedural rule and would be applicable to any action commenced after its effective date (i.e., Jan. 1, 1985). (*Anton* v. *San Antonio Community Hospital* (1982) 132 Cal.App.3d 638, 650 [183 Cal.Rptr. 423].)

The law revision commission comment states that this section was intended as a negative response to *In re Marriage of Lotz* (1981) 120 Cal.App.3d 379 [174 Cal.Rptr. 618], where the court had found that a declaration in wife's and husband's companion wills that all property of the parties was community property precluded wife from claiming a separate property interest in certain property. (See Cal. Law Revision Com. com., 12B West's Ann. Civ. Code, § 5110.740 (1990 pocket pt.) p. 11.) The commission's comment further states that Civil Code section 5110.740 "is consistent with the general concepts that a will is ambulatory and subject to subsequent revocation or modification and does not speak until the testator's death. [Citation.]" (*Ibid.*)

We agree with Gladys that her statements of testamentary intent could not be used by the trial court to find that she had *already* donated/transmuted a one-half interest in the property to James, i.e., that her intent to donate at her death had the effect of a present donation. The reasoning behind Civil Code section 5110.740 is applicable here: Gladys could change her mind about what would happen "upon her death." Besides, if the trial court were to use Gladys's testamentary intent as evidence of the status of the property, it appears to us it more likely would support a finding that the property had indeed remained her separate property. The court stated that Gladys testified she intended *to leave* one-half of the property to James and that *upon her death*, one half of the house would go to James. That is an indication she considered it all to be hers at that point in time. *Her* beliefs are what count because only she could transmute her property.

### 4. *James's Reasonable Belief Is Irrelevant*

■ Gladys contends that the trial court erred in using or relying upon James's "reasonable belief" regarding the existence and extent of any promise or commitment made by her. Specifically, Gladys points to the trial court's statement in its "findings and orders regarding petitioner's motion for new trial," where it stated, "In conclusion, the court reassessed the evidence presented by review of the reporter's transcript and remains convinced that the [*sic*] [James] was reasonable in his intrepretation [*sic*] of [Gladys's] statements over a period of 39 years that she intended to make a gift of one-half of said real property to [James]." Gladys argues that the following analysis taken from *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244 [105 Cal.Rptr. 483] is applicable here.

"It has been held that testimony of the hidden beliefs of a party is ineffective to show that a joint tenancy deed is not reflective of the character of the property. [Citations.] An analogous conclusion is warranted by the facts of the instant case. Although it might be found that testimony by a

husband as to his undisclosed intent to transmute his separate property to community property has probative value, the same cannot be said of testimony by a wife as to her undisclosed beliefs respecting her husband's property. Such testimony has no probative value as to the intent of the husband and it is not effective to show an implied agreement between the parties to alter the character of the husband's property." (*In re Marriage of Jafeman, supra,* 29 Cal.App.3d at pp. 258-259.)

We concur with the *Jafeman* court and believe its conclusion applies with equal force here. Gladys's objection to any consideration of James's reasonable belief as evidence of *her* intent is well taken.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to conduct further proceedings consistent with the views expressed herein. Gladys shall recover her costs on appeal.

Klein, P. J., and Danielson, J., concurred.