[No. B162439. Second Dist., Div. Five. Nov. 21, 2003.]

GILMORE E. RAPHAEL, Plaintiff and Respondent, v.
JUNE S. BLOOMFIELD, Defendant and Appellant.

**COUNSEL**

Holmes & Holmes and Linda T. Barney for Defendant and Appellant.

Law Office of Peter I. Bersin, Peter I. Bersin; Drucker & Steinschriber and Stephen Marc Drucker for Plaintiff and Respondent.

**OPINION**

**MOSK, J.—**

## INTRODUCTION

In *In re Marriage of McDonald* (1975) 52 Cal.App.3d 509 [125 Cal.Rptr. 160] (*McDonald*), the Court of Appeal held that a workers' compensation lump sum award pursuant to a settlement agreement[1] received by an injured

---

[1] Under the Workers' Compensation law, "nothing in this division shall: [¶] (a) Impair the right of the parties interested to compromise . . . any liability which is claimed to exist under this division on account of injury or death." (Lab. Code, § 5000.) That liability may include disability and life pension payments and medical expenses.

spouse after a marital separation was the injured spouse's separate property. The question presented in this appeal is whether such a lump sum settlement award received *before* separation is the injured spouse's separate property. We hold that the portion of such an award attributable to disability or pension payments owed during the marriage or medical expenses paid with community funds is community property, but the remainder of the award is the injured spouse's separate property. The trial court in this case found the entire lump sum award received by defendant and appellant June S. Bloomfield (wife) was community property despite evidence that most of the award was attributable to postseparation disability and life pension payments and future medical expenses. Accordingly, we reverse the portion of the judgment ordering wife to pay one-half of her lump sum award to plaintiff and respondent Gilmore E. Raphael (husband) and remand this matter to the trial court to determine what portion, if any, of wife's lump sum award is community property.

## BACKGROUND

Wife and husband were married in May 1994 and separated in August 2000. Both spouses suffered work-related injuries during their marriage and applied for workers' compensation benefits. Husband settled his workers' compensation claim and received a lump sum payment of $45,000 in October 2000, two months after he and wife separated. Wife, who was determined to be 90.1 percent permanently disabled, settled her workers' compensation claim and received a lump sum payment of $311,859.04 in February 2000, six months before she and husband separated.

Husband petitioned for dissolution of the marriage in February 2001. At trial, the only contested issue was whether the workers' compensation awards each spouse received were community property. Relying upon Family Code section 760 (section 760)—which raises a rebuttable presumption that property acquired during the marriage is community property (see *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 289–290 [39 Cal.Rptr.2d 673])—husband argued that wife's award was community property because she received it before separation, but husband's award was his separate property because he received it after separation. Wife contended at trial that both awards were separate property because she and husband entered into an oral agreement before the marriage to treat property acquired by each spouse as that spouse's separate property.

The trial court found that husband's award was his separate property, but that wife's award was community property—thereby impliedly finding that there was no binding oral agreement. The court ordered wife to pay husband $155,929.52, i.e., one-half of wife's lump sum award. Represented by new

counsel, wife filed a motion for reconsideration or for a new trial, on the ground that the court's finding that wife's award was community property was contrary to law. One of the documents attached to that motion was the declaration of wife's workers' compensation attorney, which explained that part of wife's award was attributable to future payments of disability benefits and pension, and the remainder of the award was attributable to future medical expenses.

The trial court denied wife's motion, finding there was no error of law because the court did not have evidence before it at trial to rebut the section 760 presumption of community property. Wife timely appealed from the judgment and order denying her motion.

## DISCUSSION

### A. *Can This Court Consider a Theory That Was Not Raised at Trial?*

On appeal, wife contends that her workers' compensation award was not community property because it represents future payments to compensate her for her diminished earning capacity and for her future medical expenses. Wife did not advance this argument during the trial in this case (although she did make the argument in her posttrial motion for reconsideration or for a new trial). As noted above, wife asserted at trial that her workers' compensation award was her separate property based upon an alleged oral agreement between wife and husband.

Ordinarily, "[t]he theory upon which a case was tried in the court below must be followed on appeal." (*Strasberg v. Odyssey Group, Inc.* (1996) 51 Cal.App.4th 906, 920 [59 Cal.Rptr.2d 474].) Nevertheless, a reviewing court may consider points not raised at trial when important issues of public policy are involved (*Frink v. Prod* (1982) 31 Cal.3d 166, 170 [181 Cal.Rptr. 893, 643 P.2d 476]; accord, *In re Marriage of Weaver* (1990) 224 Cal.App.3d 478, 488 [273 Cal.Rptr. 696]) or when a contention newly made on appeal presents a question of law based upon undisputed facts (*Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 856 [237 Cal.Rptr. 282]). Because wife's appeal raises a question of law involving an important issue of public policy not previously addressed in California case law, we consider her contention.

### B. *Is a Lump Sum Workers' Compensation Award Received During a Marriage Community Property?*

Although no published California case has addressed the precise issue in this case—i.e., whether a workers' compensation lump sum award received prior to marital separation is community property—the California Supreme

Court and the courts of appeal have addressed related issues, such as whether postdissolution military disability pay is community property (*In re Marriage of Jones* (1975) 13 Cal.3d 457 [119 Cal.Rptr. 108, 531 P.2d 420] (*Jones*); see also *In re Marriage of Stenquist* (1978) 21 Cal.3d 779 [148 Cal.Rptr. 9, 582 P.2d 96]) and whether a postseparation workers' compensation lump sum award is community property (*McDonald, supra,* 52 Cal.App.3d 509; see also *In re Marriage of Fisk* (1992) 2 Cal.App.4th 1698 [4 Cal.Rptr.2d 95] (*Fisk*); 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 1995) Permanent Disability Benefits § 808[5], pp. 8–53). In each of those cases, the court examined the purpose of the disability payments to determine whether the compensation received by the injured spouse was community property. The approach taken by the courts in these cases is the same as that taken by courts in a majority of community property states. (See Annot., Divorce and Separation: Workers' Compensation Benefits as Marital Property Subject to Distribution (1995) 30 A.L.R.5th 139.)

In *Jones, supra,* 13 Cal.3d 457, one spouse was injured while serving in the military. The injured spouse was "retired for disability" and received monthly disability pay. (*Id.* at p. 459.) When the noninjured spouse filed suit for dissolution of the marriage, she asserted that the injured spouse's right to disability pay was a community asset. The Supreme Court disagreed. It explained that disability payments "serve to compensate the disabled veteran for the loss of military pay caused by his premature retirement and for his diminished ability to compete for civilian employment. [Citation.] So long as the marriage subsists, the veteran's reduced earnings works a loss to the community. But such community loss does not continue after dissolution; at that point the earnings or accumulations of each party are the separate property of such party. [Citation.] Then any diminution in earning capacity becomes the separate loss of the disabled spouse." (*Id.* at p. 462.) The court concluded, "Since disability pay serves primarily to compensate the disabled serviceman for current suffering and lost earning capacity, we conclude that only such payments as are received during the marriage constitute a community asset. The veteran's right to payments subsequent to dissolution is his separate and personal right." (*Id.* at p. 464.)

The Court of Appeal in *McDonald, supra,* 52 Cal.App.3d 509, came to the same conclusion with regard to workers' compensation permanent disability pay. The court noted that in *Northwestern Redwood Co. v. Industrial Acc. Commission of California* (1920) 184 Cal. 484 [194 P. 31] (*Northwestern*), the California Supreme Court held that the wife of an industrially injured spouse could recover workers' compensation permanent disability benefits owed to her spouse after he deserted her and was never heard from again, under a statute that allowed a lien on workers' compensation benefits where

the injured employee had deserted or was neglecting the employee's family,[2] on the ground that those benefits constituted community property. But according to the court in *McDonald*, *Northwestern*'s statement that workers' compensation payments are community property did not control the case before the *McDonald* court because *Northwestern* " 'dealt with benefits received during the marriage. No decisions have determined whether an employee's right to future work[ers'] compensation benefits constitutes a community asset subject to division upon dissolution of the marriage.' " (*McDonald, supra,* 52 Cal.App.3d at p. 511, quoting *Jones, supra,* 13 Cal.3d at p. 464, fn. 7.) The court in *McDonald* concluded that a workers' compensation permanent disability award is like the military disability pay at issue in *Jones,* in that both are based on disability and serve to compensate the injured party for his or her diminished earning capacity. Therefore, relying upon *Jones,* the court held that a workers' compensation permanent disability award received after separation is the injured spouse's separate property. (*McDonald, supra,* 52 Cal.App.3d at p. 513; accord, *Fisk, supra,* 2 Cal.App.4th at p. 1705.)

■ This same reasoning leads us to conclude that, notwithstanding the section 760 community property presumption, a lump sum permanent disability award received *prior to* separation is the injured spouse's separate property to the extent it is meant to compensate for the injured spouse's diminished earning capacity (and/or medical expenses) *after* separation. The Supreme Court's statement in *Northwestern, supra,* 184 Cal. at page 486, that workers' compensation benefits are community property does not govern because later authorities have limited the effect of *Northwestern* and its peculiar facts to benefits owed and received during the parties' marriage. (*McDonald, supra,* 52 Cal.App.3d at p. 511.) Here, at least a portion of the lump sum award received during the marriage represented future benefits, and therefore some of the benefits were not owed during the marriage. Moreover, the result in *Northwestern* and our holding here are consistent with the workers' compensation statutory scheme, which expressly allows a lien against workers' compensation benefits in favor of a deserted spouse but disallows liens other than those enumerated in Labor Code section 4903.[3] (See *Ogdon v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 196–197

---

[2] The statute at issue in *Northwestern, supra,* 184 Cal. 484—former section 24 of the Workmen's Compensation Insurance and Safety Act of 1917 (Stats. 1917, c. 586, § 24, pp. 831, 852)—was repealed and ultimately replaced by Labor Code section 4903.

[3] Labor Code section 4903 allows liens for the following: certain attorney's fees; medical expenses incurred by or on behalf of the injured employee; the reasonable value of living expenses of the injured employee; reasonable burial expenses of the deceased employee; reasonable living expenses of a deserted or neglected spouse or child of the injured employee; certain unemployment compensation that was paid to the injured employee; indemnification granted under the California Victims of Crime Program; and compensation paid by the Asbestos Workers' Account.

[113 Cal.Rptr. 206, 520 P.2d 1022] ["These two sections [Labor Code sections 4901 and 4903] indicate a clear legislative intent to remove [workers' compensation] awards from the operation of the usual remedies available to creditors, to limit and regulate the kinds of debts which may be allowed, *and to insure that the award is made available to the injured employee for his recovery and rehabilitation in accordance with the purposes of the act"* (italics added)].)

There is no logical reason to treat a lump sum workers' compensation award differently based upon whether it is received before or after separation, because the timing of the receipt is unrelated to the purpose of the award. An injured spouse who receives a lump sum award the day before a marital separation has the same diminished earning capacity, and the same need for compensation to offset that diminished earning capacity, as he or she would have if the award were received the day after the separation. Yet were we to hold that the award is community property if it is received the day before the separation, the purpose of the workers' compensation award would be thwarted because the injured spouse would not be compensated adequately for his or her diminished future earning capacity. Moreover, if an award received the day before separation were to be deemed community property, the noninjured spouse would receive a windfall because only a portion, if any, of the award is intended to compensate for a loss to the community. ■ Therefore, we hold that only that portion of a workers' compensation permanent disability award received before a marital separation that is intended to compensate for the injured spouse's reduced earnings *during the marriage* (before separation), or for injury-related expenses paid with community funds, constitutes community property. The remainder of any such award is the separate property of the injured spouse.

C. *Was There Evidence Admitted at Trial That Any Portion of Wife's Award Was Attributable to Postseparation Payments or Expenses?*

A question remains regarding whether there was evidence admitted at trial in this case that establishes that the lump sum award wife received was attributable to future disability payments and future medical expenses. At the hearing on wife's motion for reconsideration or a new trial, the trial court stated that there was no such evidence admitted at trial.[4] There was, however, evidence admitted at trial that shows the nature of the award, from which the court could have determined the portion of the lump sum award not subject to division as community property.

---

[4] The trial court refused to consider the additional evidence wife submitted in support of her posttrial motion, on the ground that it was not newly discovered evidence as required under Code of Civil Procedure section 657, the statute governing new trial motions.

There was some confusion regarding exactly what documentary evidence was admitted. At the start of the trial, the parties stipulated to admit into evidence what is referred to as "the compromise and release order" (related to wife's workers' compensation settlement) that both parties had attached to their trial briefs. During the attorneys' and court's discussion regarding the stipulation, the court and attorneys refer to Exhibit B to wife's trial brief and Exhibit 1 to husband's trial brief as admitted evidence.[5]

Exhibit 1 to husband's trial brief consisted of seven pages. The first page of the exhibit is a document entitled "Joint Order Approving Compromise & Release," which appears to have attached a two-page document entitled "Compromise and Release," which in turn attaches several exhibits. One of the exhibits attached to the Compromise and Release is a document entitled "Workers' Compensation Commutation Worksheet," which shows the computation of the present value of wife's disability life pension.[6]

The Compromise and Release states, among other things, that (1) wife has been paid for all periods of temporary disability, and has received $58,354.90 in permanent disability payments (through January 28, 2000); (2) all medical expenses incurred through the date of approval of the Compromise and Release would be paid by the insurance carrier, and all future medical expenses would be paid by wife; (3) attorney fees would be deducted from the $400,000 workers' compensation lump sum settlement payment; and (4) the insurance carrier would take credit from the settlement for the $58,354.90 permanent disability payments already paid. The Workers' Compensation Commutation Worksheet shows that wife's permanent disability benefit rate was $230.00 per week, that she would receive that weekly benefit for 11.2633 years, that she had a life pension rate of $115.96 per week, and that the pension had a commuted value of $61,413.81. This evidence shows that only a small fraction of the $400,000 settlement represented disability payments that otherwise would have been paid before wife and husband separated (from January 28, 2000 through August 2000); the remainder of the settlement, therefore, represented postseparation payments and medical expenses.

---

[5] Although the reporter's transcript attributes the statement regarding exhibit 1 to wife's attorney, it appears from the context that the speaker actually was husband's attorney.

[6] Under the Workers' Compensation law, a permanently disabled worker is entitled to disability payments for a period of time and disability life pension payments. The life pension payments commence upon termination of the permanent disability payments. The period of time during which a permanently disabled worker receives disability payments is based upon the percentage of disability, and the amounts paid as disability payments and life pension payments are based upon the percentage of disability and the injured worker's average weekly earnings. (See Lab. Code, § 4650 et seq.)

Although there was no testimony at trial that would have clarified the meaning of the documents, the documents suggest that most, if not all, of the workers' compensation award was to compensate wife for *future* medical expenses and disability and pension payments. Moreover, it appears that husband's attorney and the trial court believed that the exhibits admitted into evidence by stipulation adequately demonstrated how much of the award was allocated to future disability and pension payments and to future medical expenses. When wife's attorney attempted to question wife regarding those allocations, the court interrupted to ask, "Isn't this evidence already, per the stipulation?" Husband's attorney then agreed that this evidence had been admitted under the stipulation. Given the parties' stipulation to admit husband's Exhibit 1 into evidence and husband's attorney's concession that the documentary evidence demonstrated the allocation of the award, we conclude there was sufficient evidence presented at trial to establish that at least a portion of wife's lump sum award was her separate property.

Although there was evidence that *some* of the award was wife's separate property, we reject wife's contention that she necessarily is entitled to the *entire* lump sum award as her separate property. ■ To the extent a portion of the lump sum award represented benefits that, in the absence of wife's settlement, would have been paid prior to the parties' separation (i.e., the weekly disability payments she would have received from the time of the settlement until separation), those payments would be community property under *Northwestern*, *supra*, 184 Cal. at page 486, as later interpreted by *McDonald*, *supra*, 52 Cal.App.3d 509.

## D. *Conclusion*

Wife was found to be 90.1 percent permanently disabled as a result of job-related injuries, and therefore presumably will be unable to support herself through employment for the rest of her life. The purpose of workers' compensation insurance generally, and the purpose of wife's lump sum award specifically, is to provide that support. Under husband's theory, however, he is entitled to half of that award. Neither the law nor the equities justify such a cruel result. There can be no dispute that at least part—and no doubt most—of the lump sum award wife received six months before the marital separation represented payments intended to support wife postseparation. By distributing half of wife's award to husband, the trial court not only gave a windfall to husband, it took away wife's primary means of support, contravening the purpose of workers' compensation insurance. The law should not and does not condone the use of the theory of trial doctrine to perpetuate that result. Under these circumstances, reversal of the judgment is neither unfair to the trial court nor unjust to husband.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court to determine what portion, if any, of wife's workers' compensation lump sum award was attributable to disability and life pension payments owed before the marital separation or to medical expenses paid with community funds. That portion shall be distributable as community property, and the remainder of the lump sum award shall be deemed wife's separate property. Wife shall recover her costs on appeal.

Armstrong, J., concurred.

**GRIGNON, Acting P. J.,** Dissenting.—I have grave concerns about the correctness of the majority's holding that a workers' compensation lump sum permanent disability award *received during the marriage* is separate property. (*Northwestern Redwood Co. v. Industrial Acc. Com.* (1920) 184 Cal. 484 [194 P. 31] [workers' compensation permanent disability benefits are community property]; cf. *In re Marriage of Stenquist* (1978) 21 Cal.3d 779 [148 Cal.Rptr. 9, 582 P.2d 96]; *In re Marriage of Jones* (1975) 13 Cal.3d 457 [119 Cal.Rptr. 108, 531 P.2d 420]; *In re Marriage of Fisk* (1992) 2 Cal.App.4th 1698 [4 Cal.Rptr.2d 95]; *In re Marriage of McDonald* (1975) 52 Cal.App.3d 509 [125 Cal.Rptr. 160] [payments received *postseparation or postdissolution* are separate property].) I also have grave concerns about the propriety of the majority's conclusion that certain documents may have been received into evidence, and therefore may be relied on to support the majority's opinion, when the trial court expressly stated the documents had not been received into evidence. I will, however, leave these concerns for another case in which the issues are properly before us.

I dissent on the ground that the entire case, including trial, proceeded on one theory, and the theory relied on by the majority to reverse the judgment of the family law court relies on an entirely different theory, not raised by Wife until posttrial motions. In my view, the theory of trial doctrine should be applied to restrain us from addressing Wife's new theory of the case.

"The theory upon which a case was tried in the court below must be followed on appeal."[1] (*Strasberg v. Odyssey Group, Inc.* (1996) 51 Cal.App.4th 906, 920 [59 Cal.Rptr.2d 474].) " ' "A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant. [Citation.]" ' [Citations.]" (*Ibid.*) The theory of trial

---

[1] The theory of trial doctrine is not to be confused with the related but separate doctrine of points not properly raised in the trial court. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 394, 399, pp. 444, 451.)

doctrine is applicable where "the evidence offered and authorities submitted in a trial are directed solely to establishment of a particular legal relationship or legal doctrine of liability or defense. To permit a change in either of these on appeal would, in most cases, be highly prejudicial and accordingly is not permitted." (9 Witkin, Cal. Procedure, supra, Appeal, § 405, p. 456.) Thus, in actions between former spouses relating to property issues, the appellant may not adopt a new theory on appeal as to the nature of the property in question. (*Baskett v. Crook* (1948) 86 Cal.App.2d 355, 363 [195 P.2d 39] [change from theory of property jointly acquired during marriage as husband and wife to theory of resulting trust not permitted on appeal].)

There is an exception to the theory of trial doctrine. An appellate court has discretion to consider a new and different theory " 'where a question of law only is presented on the facts appearing in the record.' [Citation.] ' "But if the new theory contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial the opposing party should not be required to defend against it on appeal." ' " (*Strasberg v. Odyssey Group, Inc., supra,* 51 Cal.App.4th at p. 920.) A new legal theory is more likely to be considered on appeal if an important issue of public policy is involved. (*In re Marriage of Freeman* (1996) 45 Cal.App.4th 1437, 1450 [53 Cal.Rptr.2d 439]; *In re Marriage of Weaver* (1990) 224 Cal.App.3d 478, 488 [273 Cal.Rptr. 696].) In exercising its discretion as to the application of this exception, the appellate court should consider whether the party raising the new theory waived the right to assert the new theory. (*In re Marriage of Weaver, supra,* 224 Cal.App.3d at p. 489.)

Wife's theory of the trial was that there was an unequivocal oral agreement and pattern of behavior between the parties from the date of marriage to the time of physical separation that the earnings of the parties would be their separate property. Wife argued that Husband should be equitably estopped from asserting his community property interest in her workers' compensation award by the preexisting oral agreement. The case was tried on this theory and all of the evidence and argument presented by the parties related to this theory. The family law court found that the workers' compensation award received during the marriage was community property. In a motion for reconsideration or new trial, for the first time Wife argued that the workers' compensation award was not community property. The family law court rejected this theory on the ground that it had not been timely raised and the documents supporting the argument had not been received into evidence. The family law court denied the motion.

Wife raises this same new theory on appeal. The majority concludes it is purely a legal issue. It is not. As indicated by the majority, the entirety of the workers' compensation award paid to Wife is not separate property under any

legal theory. Some factual apportionment must be undertaken. The majority further concludes the relevant facts are undisputed. They are not. Not all of the relevant facts were even received into evidence.[2] To the extent some facts are undisputed, that may be because those facts were not at issue under Wife's theory of the case. Wife chose to present her case on the theory of equitable estoppel. This decision may have been tactical, based on the fact that there was no authority for the proposition that workers' compensation awards received during the marriage are separate property. Husband presented his case with Wife's theory of the case in mind. Wife lost and does not argue the family law court erred under the theory upon which the case was tried. Under these circumstances, it is "unfair" to the family law court, and "manifestly unjust" to Husband to reverse the judgment on the basis of a new theory affirmatively waived by Wife in the family law court.

---

[2] The "Workers' Compensation Commutation Worksheet," relied on by the majority, was not received into evidence.